1  **BUCKLEY SANDLER LLP**
   FREDRICK S. LEVIN (State Bar No. 187603)
2  flevin@buckleysandler.com
   DANIEL R. PALUCH (State Bar No. 287231)
3  dpaluch@buckleysandler.com
   ALI M. ABUGHEIDA (State Bar No. 285284)
4  aabugheida@buckleysandler.com
   100 Wilshire Boulevard, Suite 1000
5  Santa Monica, California 90401
   Telephone: (310) 424-3900
6  Facsimile: (310) 424-3960

7  *Attorneys for Defendants Ygrene Energy Fund,*
   *Inc. and Ygrene Energy Fund Florida, LLC*

8

9

10              **UNITED STATES DISTRICT COURT**

11      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

13  GRACHIAN L. SMITH, MARY JANE          Case No. 3:17-cv-01258
    SMITH, ALEJANDRO MARCEY, and
14  FELICIA MARCEY, individually and on   **DEFENDANTS YGRENE ENERGY**
    behalf of all others similarly situated,  **FUND, INC. AND YGRENE ENERGY**
15                                        **FUND FLORIDA, LLC'S NOTICE OF**
                                          **MOTION AND MOTION TO DISMISS**
16             Plaintiffs,                **FOR FAILURE TO STATE A CLAIM**

17      v.                                [Filed concurrently with the Declaration of
                                          Laura Strothmann]
18  YGRENE ENERGY FUND, INC.; YGRENE
    ENERGY FUND FLORIDA, LLC; and DOES   Date:    May 25, 2017
19  1 through 10, inclusive,              Time:    9:30 a.m.
                                          Crtrm.:  C - 15th Floor
20             Defendants.
                                          The Hon. Magistrate Judge Laurel Beeler
21

22

23

24

25

26

27

28

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD, AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that on May 25, 2017, or as soon thereafter as the matter may be heard, in Courtroom C – 15th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Ygrene Energy Fund, Inc. and Ygrene Energy Fund Florida, LLC (collectively or individually, "Defendant(s)" or "Ygrene") will and hereby do move this Court to dismiss the Complaint of Grachian L. Smith, Mary Jane Smith, Alejandro Marcey, and Felicia Marcey ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made on the grounds that Plaintiffs have failed to plead sufficient facts to state a plausible claim for relief under any theory.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed declaration of Laura Strothmann, all pleadings and papers on file in this action, any arguments of counsel, and such other and further matters as the Court may consider.

DATED:  April 18, 2017

Respectfully submitted,

BUCKLEY SANDLER LLP

By:  _____/s/ Fredrick S. Levin_____
     Fredrick S. Levin
     *Attorneys for Defendants Ygrene Energy Fund,*
     *Inc. and Ygrene Energy Fund Florida, LLC*

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**STATEMENT OF ISSUES TO BE DECIDED**

1. Have Plaintiffs stated a plausible claim for relief under California's Unfair Competition Law?

2. Have Plaintiffs stated a plausible claim for relief under California's Consumer Legal Remedies Act?

3. Have Plaintiffs stated a plausible claim for relief under the Florida Deceptive and Unfair Trade Practices Act?

4. Have Plaintiffs stated a plausible claim for relief based on fraudulent inducement?

5. Have Plaintiffs stated a plausible claim for relief based on negligent misrepresentation?

6. Have Plaintiffs stated a plausible claim for relief based on "unjust enrichment"?

7. Have Plaintiffs stated a plausible claim for relief based on negligence?

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.     Legislative History of PACE Financing................................................................2

      A.     California..................................................................................................2

      B.     Florida. ....................................................................................................5

II.    Plaintiffs' Complaint. ............................................................................................6

      A.     The Marceys' California Claims. .............................................................6

      B.     The Smiths' Florida Claims. ....................................................................9

ARGUMENT ......................................................................................................................11

I.     Legal Standard.....................................................................................................11

II.    The Marceys Have Not Stated a Claim Under California's Unfair Competition
      Law. .....................................................................................................................13

      A.     Ygrene's conduct was neither unfair nor fraudulent because the Legislature
           has determined that disclosing the fact that prepayment "may" occur
           sufficiently discloses the risk of prepayment. .........................................13

      B.     The Marceys' UCL claims fail even if AB 2963 is not independently
           sufficient. ...............................................................................................14

III.   The Marceys' Consumer Legal Remedies Act Claim Fails. ..................................18

IV.   The Smiths Have Not Stated a Claim Under the Florida Deceptive and Unfair
      Trade Practices Act. .............................................................................................19

V.    Plaintiffs Have Not Stated a Claim for Fraudulent Inducement. ..........................21

VI.   Plaintiffs Have Not Stated a Claim for Negligent Misrepresentation. ...................22

VII.  Plaintiffs Have Not Stated a Claim for Negligence. ............................................23

VIII. Plaintiffs Have Not Stated a Claim for Unjust Enrichment. .................................24

CONCLUSION ...................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Holdings, LLC v. Doe*,
    2012 WL 3835102 (N.D. Cal. Sept. 4, 2012)...................................................................24

*Aleksick v. 7-Eleven, Inc.*,
    205 Cal. App. 4th 1176 (2012)........................................................................................17

*Andren v. Alere, Inc.*,
    207 F. Supp. 3d 1133 (S.D. Cal. 2016) ......................................................................23, 24

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...........................................................................................24

*Behrman v. Allstate Ins. Co.*,
    388 F. Supp. 2d 1346 (S.D. Fla. 2005)............................................................................22

*Berry v. Budget Rent A Car Sys., Inc.*,
    497 F. Supp. 2d 1361 (S.D. Fla. 2007)............................................................................21

*Carroll v. Gava*,
    98 Cal. App. 3d 892 (1979)..............................................................................................22

*Casey v. Florida Coastal Sch. of Law, Inc.*,
    2015 WL 10096084 (M.D. Fla. Aug. 11, 2015).........................................................19, 21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal.4th 163 (1999)...................................................................................................13, 14

*In re Crown Auto Dealerships, Inc.*,
    187 B.R. 1009 (Bankr.M.D.Fla.1995)..............................................................................21

*Dickey v. Advanced Micro Devices, Inc.*,
    2016 WL 1375571 (N.D. Cal. Apr. 7, 2016) ...................................................................25

*Doe 1 v. AOL LLC*,
    719 F.Supp.2d 1102 (N.D. Cal. 2010) .............................................................................19

*Drum v. San Fernando Valley Bar Ass'n*,
    182 Cal. App. 4th 247 (2010) ..........................................................................................17

*Duran v. Hampton Creek*,
    2016 WL 1191685 (N.D. Cal. Mar. 28, 2016) .................................................................19

*Englert v. Prudential Insurance Company of America*,
    186 F. Supp. 3d 1044, 1046 (N.D. Cal. 2016) ...........................................................11, 12

*In re Florida Cement & Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010).............................................................19, 21

*Ford v. Hotwire, Inc.*,
   2008 WL 5874305 (S.D. Cal. Feb. 25, 2008) .................................................15, 16

*Forever 21, Inc. v. Seven Lions Inc.*,
   2012 WL 12888694 (C.D. Cal. Oct. 18, 2012) ......................................................24

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ...................................................................24

*Goodman v. Kennedy*,
   18 Cal.3d 335 (1976)..............................................................................................22

*Green v. ADT, LLC*,
   2016 WL 3208483 (N.D. Cal. June 10, 2016) (Beeler, J.)......................................7

*Green v. ADT, LLC*,
   2016 WL 5339800 (N.D. Cal. Sept. 23, 2016)........................................................24

*Halloum v. DFO, Inc.*,
   2010 WL 1390924 (Cal. Ct. App. Apr. 8, 2010).....................................................22

*Hill v. Nagpal*,
   2013 WL 246746 (S.D. Fla. Jan. 22, 2013) ............................................................24

*Kahama VI, LLC v. HJH, LLC*,
   2013 WL 6511731 (M.D. Fla. Dec. 12, 2013) ........................................................23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).........................................................................12, 16

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)..................................................................................7

*Kwikset Corp. v. Superior Court*,
   51Cal. 4th 310, 322 .................................................................................................18

*Lanz v. Resolution Trust Corp.*,
   764 F. Supp. 176 (S.D. Fl. 1991) ...........................................................................23

*Licul v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ...........................................................25

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012)....................................................................................13

*Melchior v. New Line Productions, Inc.*,
   106 Cal.App.4th 779 (2003).....................................................................................24

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

DEFENDANTS' MOTION TO DISMISS

*Nordberg v. Trilegiant Corp.*,
   445 F.Supp.2d 1082 (N.D. Cal. 2006) ............................................................18

*Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*,
   760 So.2d 1037 (Fla. Dist. Ct. App. 2000)......................................................19

*Park-Kim v. Daikin Indus., Ltd*,
   2016 WL 6744764 (C.D. Cal. Nov. 14, 2016 ...................................................19

*Porras v. StubHub, Inc.*,
   2012 WL 3835073 (N.D. Cal. Sept. 4, 2012)....................................................16

*Regents of Univ. of California v. Principal Fin. Grp.*,
   412 F. Supp. 2d 1037 (N.D. Cal. 2006) ...........................................................23

*Ronpak, Inc. v. Elecs. for Imaging, Inc.*,
   2015 WL 179560 (N.D. Cal. Jan. 14, 2015) ....................................................12

*Rosa v. Amoco Oil Co.*,
   262 F.Supp.2d 1364 (S.D. Fla. 2003)...............................................................21

*Rosal v. First Fed. Bank of Cal.*,
   671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...........................................................25

*Top Agent Network, Inc. v. Zillow, Inc.*,
   2015 WL 7709655, at *8 (N.D. Cal. Apr. 13, 2015)........................................25

*U.S. Capital Partners, LLC v. AHMSA Int'l, Inc.*,
   2013 WL 594285 (N.D. Cal. Feb. 14, 2013) ...................................................12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .........................................................................12

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) .......................................................................20

**Statutes**

Broward County Code of Ordinances, § 20-14(b) ........................................................6, 20

Cal. Civ. Code § 1780 .............................................................................................18, 19

Cal. Civ. Code § 1782 ...................................................................................................19

Cal. Gov. Code § 53328.1(a) ...........................................................................................3

Cal. Gov. Code § 53340(e) ..............................................................................................3

Cal. Prof. & Bus. Code § 17204....................................................................................17

California's Consumer Legal Remedies Act ("CLRA") ...................................2, 12, 18, 19

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

California Unfair Competition Law ........................................................................................1

California Unfair Trade Practices Act.................................................................................14

Fla. Stats. § 163.08 (2010) ...............................................................................................5, 6

Fla. Stats. § 163.08(4)(2010)................................................................................................6

Fla. Stats. § 197.3632 (2016) ...............................................................................................6

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")....................................1, 19, 20, 21

Miami-Dade Code of Ordinances, § 2–2083(7)..............................................................6, 20

UCL ............................................................................................................................. *passim*

UTPA .................................................................................................................................14

**Other Authorities**

(2015–2016 Reg. Sess.) (as amended in Assembly, April 28, 2016)........................................4

Cal. Assemb. Bill No. 2693 (2015–2016 Reg. Sess.) ................................................4, 5, 14

Cal. Assemb. Bill No. 811 (2007–2008 Reg. Sess.) ..................................................... *passim*

Cal. Senate Bill No. 555 (2011–2012 Reg. Sess.)...........................................................2, 3

Fed. R. Civ. P. 9(b).......................................................................................................12, 16

Fed. R. Civ. P. 12(b)(6).......................................................................................................11

Fla. House Bill No. 7179 (2010 Legis. Sess.) ...............................................................5, 6

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

# INTRODUCTION

Plaintiffs bring this purported class action alleging that Ygrene failed to adequately disclose the risk that Plaintiffs' PACE obligations would need to be prepaid in the event they sought to refinance or sell their homes.  According to Plaintiffs, Defendants disclosed that lenders or prospective buyers of their homes "may" require them to prepay the balance of their PACE obligations to refinance or sell when it was "virtually certain" that lenders or subsequent purchasers would require such prepayment.  Plaintiffs assert that Ygrene's use of the word "may" misled them and that they are therefore entitled to remedies for unfair and deceptive trade practices, fraud and other common law torts under California and Florida law.

To the contrary, the California Legislature recently considered the precise question raised in the Complaint and unanimously determined  that informing homeowners that they "may" be required to prepay their PACE obligations prior to refinance or sale provides adequate disclosure of the prepayment risk.  "May" is also the word mandated by Miami-Dade County, Florida to convey this risk, and is the word recommended for this disclosure by the Department of Energy in its Best Practices Guidelines for Residential PACE Financing Programs.  No legislative body in California or Florida requires that the risk of prepayment be conveyed with words any more certain than the word "may."  This Court should not permit Plaintiffs to second-guess the Legislature's determination that use of the word "may" in PACE disclosures adequately and accurately conveyed the risk of prepayment to Plaintiffs.  Accordingly, Plaintiffs have not stated a claim for deceptive or fraudulent conduct under California or Florida law.  Indeed, because this defect permeates each of Plaintiffs' causes of action, the entire Complaint must be dismissed.

Plaintiffs' causes of action each have other flaws that require dismissal of the Complaint:

*First*, Plaintiffs' California Unfair Competition Law ("UCL") and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims fail (a) because Plaintiffs have not plausibly alleged that any of the disclosures they received were actually misleading to a reasonable consumer and (b) because Plaintiffs fail to allege that the conduct complained of caused injury-in-fact.  Both the possibility of prepayment and the existence of a prepayment premium were disclosed in the financing agreements Plaintiffs received.  Given these disclosures, it was not

reasonable for the Plaintiffs to believe—as they now claim—that they would never be required to prepay their obligations to refinance or sell their homes.  Moreover, the allegations in the Complaint do not create a plausible inference that the conduct complained of—use of the word "may"—caused Plaintiffs harm, *i.e.* the Complaint does not plausibly allege that the Plaintiffs read the word "may," misunderstood it, and relied on that misunderstanding to their detriment.

*Second*, Plaintiffs' Consumer Legal Remedies Act ("CLRA") claim fails because Plaintiffs failed to comply with the CLRA's procedural requirements.

*Third*, Plaintiffs' fraudulent inducement claim, negligent misrepresentation claim, and negligence claim all fail because, on the facts pled, the Defendants did not owe Plaintiffs any duty as a matter of law and because the risk of prepayment was disclosed to the Plaintiffs.

*Finally*, Plaintiffs' unjust enrichment claim fails because a cause of action for unjust enrichment is meritless where, as here, Plaintiffs have chosen to sue in tort and there is an express contract concerning the same subject matter.

Accordingly, all of Plaintiffs' causes of action are fatally defective and the Complaint should be dismissed in its entirety.

## BACKGROUND

### I.  Legislative History of PACE Financing.

#### A.  California.

The California PACE program at issue here was formed under California Senate Bill ("SB") 555.  *See* Cal. Senate Bill No. 555 (2011–2012 Reg. Sess.).  However, PACE programs in California predate the introduction of SB 555; the State's first PACE programs were made possible with the enactment of Assembly Bill ("AB") 811 in July 2008.  *See* Cal. Assemb. Bill No. 811 (2007–2008 Reg. Sess.).  In AB 811, the Legislature found that "the promotion of energy efficiency improvements" served a critical public purpose.  *Id.* § 2.  The Legislature also found that the "upfront cost" of making energy efficient improvements "prevents many property owners from making those improvements."  *Id.*  The Legislature thus determined that "[t]o make those improvements more affordable and to promote the installation of those improvements, it is necessary to authorize an alternative procedure … to finance the cost of energy efficiency

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   improvements." *Id.* Accordingly, the Legislature amended parts of the Improvement Act of 1911

2   to allow municipal governments to impose assessments on real property to recoup the cost of

3   certain energy efficiency improvements. *See AB 811.*

4         With the enactment of SB 555 in 2011, the California Legislature provided localities with

5   an additional way to form PACE districts and fund PACE programs. SB 555, § 3. SB 555

6   amended the Mello-Roos Community Facilities Act of 1982 and authorizes municipal

7   governments to form voluntary special-use community facilities districts to finance energy

8   efficiency, water conservation, renewable energy, and other improvements to or on real property.

9   *See id.*, §§ 1, 3. Like AB 811, the Legislature in SB 555 found that "global warming poses a

10  serious threat" to California's well-being. *Id.* § 8. The Legislature further found that the threat of

11  global warming could be reduced, and the State's interests would be served, by "providing the

12  legislative body of a local agency with the authority to use special taxes … to finance the

13  installation of energy efficiency and renewable energy improvements." *Id.*

14        Community facilities districts formed under SB 555 work through the Mello-Roos Act's

15  financing system. The authorizing statute allows a city, county, or public agency to adopt a

16  resolution allowing special taxes to be levied within a certain area. Cal. Gov. Code § 53328.1(a).

17  A homeowner in that area can then identify an energy-efficient improvement they want, identify a

18  licensed contractor, and then apply to the participating government entity for approval. If

19  approved, the cost of the improvements is financed through a special tax levy that is collected in

20  the same manner as any other ordinary ad valorem property tax. Cal. Gov. Code § 53340(e).

21        Importantly, PACE obligations have been since their inception inherently taxes, not

22  consumer loans. Unlike consumer loans, there is no promissory note or personal debt instrument;

23  there is no right to accelerate the entire amount of the special tax in response to a missed payment;

24  and there is no right of personal or other form of recourse against a homeowner who has a special

25  tax levied on her property. Instead, the special tax runs with the land, and is collected in the same

26  manner as all other ordinary ad valorem property taxes. *Id.*

27        Because PACE financing agreements result in the imposition of a tax lien, the Federal

28

**BUCKLEY SANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

Housing Finance Agency ("FHFA")[1] in 2010 imposed restrictions on the ability of Fannie Mae and Freddie Mac to purchase mortgages associated with properties encumbered by PACE liens to reduce risk to lenders and secondary market entities.  Compl. ¶¶ 35, 46–47.  These restrictions were well-publicized by news outlets and the FHFA, which warned homeowners and the general public that the restrictions "*may* … require the homeowner to pay off the PACE [obligation] before selling the house."  *Id.* ¶ 50 (emphasis added); *see also id.* ¶¶ 57–58, 60 (quoting articles published in mainstream news outlets that discussed the FHFA's restrictions).

Responding in part to the FHFA's restrictions, California Assembly Member Matt Dababneh introduced AB 2693 on February 19, 2016.  *Id.* ¶ 61 (AB 2693 was introduced to "clearly identify the terms and conditions of [PACE obligations] and the subsequent impact such [obligations] have on existing mortgages and the consumer's ability to sell or refinance their home").  After introduction, AB 2693 was amended to include mandated form disclosures to address the Legislature's concerns about PACE disclosures.  Cal. Assemb. Bill No. 2693, § 5 (2015–2016 Reg. Sess.) (as amended in Assembly, April 28, 2016).  Those disclosures addressed the risk of prepayment by requiring property owners to acknowledge that "if I refinance my home, my mortgage company *may* require me to pay off the full remaining balance of this obligation.  If I sell my home, the buyer or their mortgage company *may* require me to pay off the full remaining balance of this obligation."  AB 2693, § 5 (as amended in Assembly, April 28, 2016) (emphasis added).

AB 2693 went through several levels of review, both in the Senate and the Assembly.  Although the bill was amended several times, every version of the bill, including the version unanimously passed by the Legislature and signed by the Governor on September 25, 2016, uses the same word to describe the possibility that homeowners will have to prepay their PACE obligations: "may."  *See* AB 2693, § 5 (as amended in Assembly, April 28, 2016); AB 2693, § 6 (as amended in Senate, June 6, 2016); AB 2693, § 6 (as amended in Senate, June 22, 2016); AB

---

[1] The FHFA is an independent federal agency that is responsible for the supervision, regulation, and oversight of Fannie Mae and Freddie Mac.  *See* Federal Housing Finance Agency, About FHFA, https://www.fhfa.gov/AboutUs (last accessed April 11, 2017).

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1  2693, § 6 (as amended in Senate, August 2, 2016); AB 2693, § 6 (as amended in Senate, August

2  19, 2016); AB 2693, § 6 (as approved by Governor, September 25, 2016).

3  The enacted version AB 2693, which became effective on January 1, 2017, contains an

4  unambiguous expression of legislative intent: "[t]he passage of this act is essential to promote

5  standardized disclosures and protections for consumers . . . ." *Id*. § 1(a)(5).  Having considered

6  the issue multiple times, the Legislature unanimously decided that the best way to address the

7  problem that "[t]he consumer obligation to repay [obligations] created by the [PACE] program is

8  sometimes misunderstood and *may* affect the consumer's ability to refinance their loan or sell their

9  property" is to inform consumers that they *may* have to prepay their PACE obligation before

10 refinancing or selling their homes.  *Id*. § 1(a)(3) (emphasis added).  Thus, in the unanimous

11 opinion of the Legislature, disclosure language informing property owners that they "*may* be

12 required to pay off the remaining balance" of their PACE obligation prior to sale or refinance

13 adequately and accurately informs homeowners of the likelihood with which they will have to

14 prepay their PACE obligation.  *Id*. §§ 1, 6 (emphasis added).

15 AB 2693's disclosure language is also consistent with the Department of Energy's

16 ("DOE") best practices guide for PACE financing programs.  The DOE advises PACE finance

17 companies to disclose that a "PACE obligation constitutes an obligation on their home…which

18 *may* be required to be paid-off by a future lender (upon refinancing or by the purchaser's lender)

19 or by a future buyer as a term of purchase."[2]

20 **B.  Florida.**

21 On April 30, 2010, the Florida Legislature established Florida's PACE program with the

22 enactment of House Bill ("HB") 7179.  *See* Fla. House Bill No. 7179 (2010 Legis. Sess.).  In HB

23 7179, the Florida Legislature found that the promotion of "energy conservation and efficiency"

24 improvements was "reasonable and necessary to serve and achieve a compelling state interest,"

25 and was "necessary for the prosperity and welfare of the state and its property owners and

26 inhabitants."  *Id*. § 1 (codified at Fla. Stats. § 163.08(1)(a)–(c)(2010)).  Accordingly, the

27 _____

[2] Department of Energy, Best Practice Guidelines for Residential PACE Financing
28 Programs 10 (Nov. 18, 2016) (emphasis added).

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1  Legislature authorized local governments to adopt resolutions or ordinances allowing property

2  owners to apply to the local government for funding to finance certain energy efficiency

3  improvements. *Id.* (codified at Fla. Stats. § 163.08(4)(2010)). Like California's PACE

4  legislation, HB 7179 allows local governments to fund qualifying efficiency improvements

5  through the imposition of non-ad valorem tax assessments that are collected in the same manner as

6  other tax assessments imposed on real property—provided, however, that the PACE assessments

7  are not subject to discount for early payment. *Id.* PACE assessments in Florida, like PACE

8  obligations in California, run with the land, are collected along with other applicable property

9  taxes, and are enforced in the same manner as all other property taxes. *Id.*; *see also* Fla. Stats.

10 § 197.3632 (2016).

11      Unlike California, Florida has not adopted uniform disclosure requirements for PACE

12 programs. Instead, Florida's PACE disclosure requirements are regulated at the local level, in

13 accordance with HB 7179. HB 7179, § 1. For example, the PACE-implementing ordinance

14 passed by Broward County, where the Smiths live, requires a written notice disclosing, *inter alia*,

15 that "there is no discount for paying the PACE assessment early," and that "the property

16 improvements and PACE assessment *may* or *may* not affect the overall value of the property."

17 Broward County Code of Ordinances, § 20–14(b) (emphasis added). Further, Miami-Dade

18 County's PACE ordinance requires the use of a written agreement that discloses to homeowners

19 "the risk that they *may* not be able to refinance the home or sell the home unless the Assessment is

20 paid off in full first." Miami-Dade Code of Ordinances, § 2–2083(7) (emphasis added).

21 **II.      Plaintiffs' Complaint.**

22      The Plaintiffs—the Smiths and the Marceys—allege that they obtained PACE financing

23 through Ygrene. Compl. ¶¶ 116–140.

24      **A.      The Marceys' California Claims.**

25      The Marceys, who are from Chula Vista, California, allege that an unidentified contractor

26 approached them in October 2015 and provided them with an estimate for a roof replacement and

27 new windows. *Id.* ¶ 131. This unidentified contractor pitched the "Ygrene program" as an option

28 for financing renovations to the Marceys' home. *Id.* "[T]o obtain funding," the Marceys were

required to sign a "Unanimous Approval Agreement" ("Agreement"). *Id.* ¶ 134. The Agreement is a contract between the City of Chula Vista (the "City") and the Marceys that "specifies the terms under which the Property . . . will participate in the [PACE] program" if they "annex" their property to the City's PACE district. Declaration of Laura Strothmann ("Strothmann Decl."), Ex. A ("UAA") at 1.[3]

The Agreement provided that the City would advance a specified amount to the Marceys to be used to acquire and install on their property certain energy-efficient improvements. *Id.* ¶ 4. By entering into the contract, the Marceys obtained at least $34,289.97 from the City to improve their property. Compl. ¶ 135. In the Agreement, Plaintiffs "consent[ed] to the levy of the Special Tax" and recordation of a lien on the property reflecting the Special Tax. UAA ¶ 3(a). The Agreement warned the Marceys that failure to timely pay the special tax assessments authorized by the agreement could result in foreclosure of their property. *Id.* ¶ 3(b). The Agreement further expressly provided that if the Marceys prepaid the special tax obligation that there would be a five percent "prepayment premium." *Id.* ¶ 10; UAA, Ex. B.

Importantly, the Agreement also disclosed to the Marceys that they "may" be required to prepay their special tax obligation if they chose to refinance or sell their property.

> Many banks that make home loans desire to preserve the option to sell those loans to U.S. government-sponsored enterprises (called "GSEs") that are regulated by the Federal Housing Finance Agency ("FHFA"). The FHFA appears to have instructed GSEs not to purchase home loans where there is a superior lien for clean-energy-related improvements, such as the special-tax lien. *Thus, in order to refinance your home loan, or for a prospective purchaser of your property to obtain a loan secured by the property, you may need to remove the special-tax lien by prepaying the special-tax obligation in full.*

UAA ¶ 14(c)(emphasis added); Compl. ¶ 134. Given that the Marceys "may" be required to prepay the special tax obligation to refinance or sell, the Marceys were specifically

---

[3] Agreements, including disclosures, are properly considered on a motion to dismiss under the incorporation-by-reference doctrine when alleged in the Complaint or when the plaintiff's claim depends on the contents of a document. *See Green v. ADT, LLC*, 2016 WL 3208483, at *4 (N.D. Cal. June 10, 2016) (Beeler, J.) (considering an agreement referenced in the complaint in ruling on a motion to dismiss); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

cautioned to:

> consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the special-tax obligation, in deciding whether to annex your property to the district.

*Id*.  In addition to the foregoing disclosures of the potential need to prepay the lien in the event of sale or refinancing and the existence of the prepayment premium, the Plaintiffs' financing agreements also warned Plaintiffs that it was their "sole" responsibility to deal with their lenders:

- "Existing mortgage lenders may contend that by entering into the Unanimous Approval Agreement *the Owner has violated the loan agreements or deeds of trusts*."  UAA ¶ 14(b)(3) (emphasis added).

- "…The Owner's contractual relations with lenders are the Owner's sole responsibility…"  UAA ¶ 14(b)(5).

The UAA concludes by explaining that the "agreement contains the parties' entire understanding regarding the matters addressed and is intended to be their final, complete, and exclusive expression of those matters."  UAA ¶ 26.  The Marceys signed their PACE financing agreement in no less than six places and initialed it in another four places.  UAA at pp. 4–5, 8–9, 14–15.

Although the Marceys allege that they never spoke to any Ygrene employee or representative, they allege that, "prior to entering into the loan," they reviewed unspecified excerpts of Ygrene's "website and marketing materials includ[ing]" the statement that "If the property is sold, the tax assessment moves with the sale to the new owner."  Compl. ¶ 133.  Plaintiffs complain that the Agreement's disclosure—that they "may" need to prepay their special tax obligation to refinance or sell their property—was itself deceptive because the likelihood of prepayment was "almost certain[]" if they wanted to refinance or sell their home.  *Id*. ¶ 123.  The Marceys claim they were unfairly or fraudulently led to believe that their obligation "would transfer to subsequent owners of their home—and they would not have to satisfy the loan or incur a prepayment penalty."  *Id*. ¶ 137.  The Marceys claim that they attempted to refinance in April 2016 and were "shocked to discover they would not be able to refinance without fully satisfying" their special tax obligation.  *Id*. ¶ 139.  Nevertheless, in the very next paragraph, the Marceys state that they refinanced without prepaying but were "forced into an FHA loan with unfavorable terms, on the condition that they take out extra mortgage insurance."  *Id*. ¶ 140.

1

    **B.**    **The Smiths' Florida Claims.**

2

    The Smiths, who reside in Hollywood, Florida, allege that, in or about September 2016, a

3

roofing contractor suggested that they could use a Ygrene PACE assessment to purchase

4

replacement windows for their home.  *Id.* ¶ 117.  "Ultimately, [the Smiths] were referred by

5

Ygrene to Florida Home Improvement Associates, Inc., a Ygrene 'certified' contractor."

6

*Id.* ¶ 118.  Thereafter, the Complaint alleges that the Smiths signed two sets of documents to

7

obtain $16,777.97 to improve their home.  *Id.* ¶¶ 119–125.

8

    The Complaint alleges that the Smiths were required to sign a document entitled

9

"Agreement to Pay Assessments and Finance Qualifying Improvements."  *Id.* ¶ 121; Strothmann

10

Decl., Ex. B (the "Smith Agreement").[4]  The Smith Agreement states that Grachian Smith and the

11

District "are voluntarily entering into this Agreement for the purpose of financing the installation"

12

of the property improvements and that Grachian Smith "agrees to imposition by the District of the

13

Assessment . . . to repay the costs incurred by the District with respect to financing  . . . the []

14

improvements."  Smith Agreement, at 3–4.  The Smith Agreement provides further that "the

15

Assessment shall constitute a lien against the Property . . . . [and] that if any Assessment . . . is not

16

paid when due [it] may cause a tax certificate to be issued against the property, which will result in

17

potential loss of the property if not paid."  *Id.* at 5.

18

    Importantly, under a heading entitled "Special Disclosure Regarding Certain Mortgage

19

Lenders," the Smith Agreement also disclosed to the Smiths that they "may" be required to prepay

20

their assessment if they chose to refinance or sell their property:

21

    Many lenders that make residential loans desire to preserve the option to sell

22

    those loans to [GSEs] that are regulated by the [FHFA].  The FHFA appears to
    have instructed its GSEs not to purchase home loans where there is a superior

23

    lien for qualifying improvements, such as the assessment lien.  *Thus, in order to*
    *refinance your residential loan, or for a prospective purchaser of your property*

24

    *to obtain a loan secured by the property, you may need to remove the*
    *assessment lien by prepaying the assessment obligation in full.*

25

Smith Agreement § 9 (emphasis added); Compl. ¶ 121.  Given that the Smiths "may" be

26

_____

27

    [4] As with the Agreement signed by the Marceys, the Smith Agreement is properly before
the Court on this Motion to Dismiss because it is cited, quoted and incorporated into the

28

Complaint by reference.  *Davis*, 691 F.3d at 1170.

**BUCKLEY SANDLER LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Tel. (310) 424-3900 • Fax (310) 424-3960

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

required to prepay the assessment to refinance or sell, the Smiths, like the Marceys, were specifically cautioned to:

> consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the assessment obligation, in deciding whether to participate in the program by executing this agreement.

Smith Agreement § 9.  The Smith Agreement is notarized and signed or initialed in three places.  *Id.*

In addition to the Smith Agreement, the Complaint alleges that the Smiths were required to sign a separate disclosure entitled "Notice of Rights and Responsibilities for Property Owners in the Clean Energy Green Corridor PACE District."  Compl. ¶ 119; Strothmann Decl., Ex. C (the "Smith Notice").  Among other things, the Smith Notice informed the Smiths that "the District does not guarantee that the Program is the best financing option."  Smith Notice ¶ 2.  Accordingly, the Smiths were urged to "investigate and assess ALL available options before proceeding with the Program, which has advantages and disadvantages when compared to other financing options."  *Id.* at 1 (capitalization in original).  The Smiths were further advised to "obtain advice from qualified professionals when selecting the option that is most appropriate for their particular situation."  *Id.* ¶ 2.  The Smith Notice also discloses:

> Many mortgage and loan documents limit the ability of a Property Owner to place senior liens on property without the consent of the lender, or authorize the lender to obligate borrowers to prepay the senior obligation.

*Id.* ¶ 6.  Finally, the Notice warns:

> The [FHFA] has issued policy guidelines that question the validity of PACE assessments; however, Florida law only requires the Property Owner to NOTIFY their mortgage holder of their intent to participate in the PACE program.  Consent of the mortgage holder is NOT required.  Therefore, *the contractual relationship with any lender is the sole responsibility of the Property Owner*.  Many financial institutions that make home loans desire to preserve the option to sell those loans to the entities that are regulated by the FHFA.  The FHFA appears to have instructed its GSEs not to purchase home loans when there is a senior lien such as a PACE special assessment.  Therefore, in order to refinance your home loan, or for a prospective purchaser of your property to obtain a loan secured by the property, the special assessment may need to be paid off.

*Id.* ¶ 7 (italics added).  The Smith Notice is signed under a certification "THAT I HAVE READ AND UNDERSTAND THE ABOVE DISCLOSURE."  *Id.*, at 2.

In or about November 2016, the contractor hired by the Smiths completed the

improvements funded via the PACE assessment.  Compl. ¶ 124.  At that time, as contemplated by the Smith Agreement, Grachian Smith executed an "Estimated Settlement Statement." Strothmann Decl. Ex. D (the "Smith Statement").  The Smith Statement is signed and was initialed in eight places.  In the Smith Statement, Grachian Smith certified that he:

> received a copy of this Estimated Settlement Statement, have carefully reviewed it and, to the best my knowledge and belief, it is a true and accurate settlement of all receipts and disbursements made on my account, or by me, to date, in the transaction.

Smith Statement, at 3.  The statement discloses under the heading "elective fees" a charge of $221.34 for a "pre-payment waiver fee."  Compl. ¶ 126; Smith Statement, at 1.

The Smiths allege that "[b]ased on Ygrene's misrepresentations and omissions, [they] understood that their Ygrene loan would transfer to subsequent owners of their home" and that they would not have entered into an agreement through Ygrene had they known the "truth." Compl. ¶¶ 128–129.  However, the Complaint does not allege that the Smiths relied on anything said by a contractor or contained in Ygrene's website or marketing materials.  Comp. ¶¶ 116–129. Instead, the Smiths point only to Ygrene's disclosures warning the Smiths that "to refinance your residential loan, or for a prospective purchaser of your property to obtain a loan . . . you may need . . . to remove the assessment lien by prepaying the assessment obligation in full."  *Id.* ¶¶ 119, 121. They claim that these disclosures "[in]adequately disclos[ed]" that they would "almost certainly have to satisfy their PACE loan should they wish to refinance or sell their home."  *Id.* ¶ 123.  The Smiths also complain that they were charged a pre-payment waiver fee.  *Id.* ¶ 126. Notwithstanding their certification that the pre-payment waiver fee was part of an "accurate settlement" of disbursements "made on my account," they claim never to have agreed to the charge.  *Id.*

## ARGUMENT

### I.    Legal Standard.

Under Fed. R. Civ. P. 12(b)(6), a district court must dismiss a complaint if it fails to state a claim.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Englert v. Prudential Insurance Company of*

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   *America*, 186 F. Supp. 3d 1044, 1046 (N.D. Cal. 2016) (*quoting Bell Atl. Corp. v. Twombly*, 550

2   U.S. 544, 570 (2007)).  This "facial plausibility" standard requires the plaintiff to allege facts that

3   add up to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1046–47

4   (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff must provide "more than labels

5   and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at

6   1047 (*quoting Twombly*, 550 U.S. at 555).  On a motion to dismiss, the court accepts as true a

7   plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most

8   favorable to the plaintiff. *Id.* (*quoting Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

9   1025, 1031 (9th Cir. 2008)).[5]  But, the plaintiff must allege facts sufficient to "raise a right to

10  relief above the speculative level." *Id.* (*quoting Twombly*, 550 U.S. at 555).

11          For claims that sound in fraud, including claims brought under the "fraudulent" prong of

12  the UCL, claims brought under the CLRA, claims for fraudulent inducement, and claims for

13  negligent misrepresentation, the Federal Rules of Civil Procedure require a heightened level of

14  pleading. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009)

15  (Rule 9(b)'s heightened pleading standards apply to UCL and CLRA claims "grounded in fraud");

16  *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, 2015 WL 179560, at *2 (N.D. Cal. Jan. 14, 2015) (claims

17  for fraudulent inducement "necessarily fall within the scope of Rule 9(b)"); *U.S. Capital Partners,*

18  *LLC v. AHMSA Int'l, Inc.*, 2013 WL 594285, at *3 (N.D. Cal. Feb. 14, 2013) (negligent

19  misrepresentation claims "grounded in fraud" must satisfy Rule 9(b)'s heightened pleading

20  requirements).  This rule requires the circumstances constituting fraud to be stated "with

21  particularity." Fed. R. Civ. P. 9(b).  Courts have explained that this standard requires, at a

22  minimum, that the plaintiff allege "the who, what, when, where, and how" of the misconduct

23  charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

24

25          [5] Defendants do not concede the truth of any of Plaintiffs' allegations.  For purposes of this

26  motion to dismiss only, Defendants assume the truth of the allegations in the Complaint as
    required by the Federal Rules of Civil Procedure.  However, nothing contained herein should be

27  construed as an admission or concession of any of Plaintiffs' allegations, the merit of the

28  Complaint, or liability.  Defendants expressly reserve all of their rights.

**II.     The Marceys Have Not Stated a Claim Under California's Unfair Competition Law.[6]**

The Marceys claim they were unfairly or fraudulently led to believe that their special tax obligation "would transfer to subsequent owners of their home—and they would not have to satisfy the loan or incur a prepayment penalty."  Compl. ¶ 137.  Had they been given "adequate disclosures," the Marceys never would have "entered into an agreement through Ygrene."  *Id.* ¶ 138.  The Complaint thus admits that the Marceys would have been disabused of their misconceptions about PACE financing by "adequate disclosures…."  *Id.* at 42.  That the harm the Marceys allegedly suffered could have been avoided by "adequate disclosures" bespeaks the central flaw fatal to their UCL claims.  The Marceys were in fact given "adequate disclosures"— disclosures that the California Legislature has found adequately address the very concerns raised in the Complaint—and Ygrene's conduct therefore was not unfair or fraudulent as a matter of law.

However, even if the Legislature's judgment were not itself dispositive, which it is, the Marceys have not stated a claim for violation of the UCL: their "unfair" prong claim does not meet the requirements for any of the three tests for unfairness under the UCL, and the Complaint does not identify any conduct likely to deceive any member of the public.  Accordingly, the Marceys' UCL claims should be dismissed.

**A.     Ygrene's conduct was neither unfair nor fraudulent because the Legislature has determined that disclosing the fact that prepayment "may" occur sufficiently discloses the risk of prepayment.**

The California Supreme Court in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) considered the extent to which courts may hold defendants liable for conduct explicitly permitted by the Legislature.  In *Cel-Tech*, a cellular telephone retailer brought UCL claims against a cellular telephone wholesaler because the wholesaler sold telephones below cost, making up for its losses on telephone sales with increased sales of cellular telephone services.  20 Cal.4th at 168.  Certain of those below-cost sales were permitted by

---

[6] As Florida residents who were purportedly harmed in Florida as a result of conduct occurring in Florida, the Smiths cannot state a claim for violations of the UCL.  *See, e.g.*, *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012) (UCL does not apply to the claims of plaintiffs injured outside of California).

provisions of the California Unfair Trade Practices Act ("UTPA"). *Id.* at 187–88.  Reasoning that courts may not substitute their own judgment for that of the Legislature, the Court held that "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Id.* at 182.  Accordingly, the sales that were legal under UTPA could not give rise to liability under the UCL.  *Id.* at 187–88.

The logic underlying the decision in *Cel-Tech* applies with equal force in this case.  As discussed above, the California Legislature enacted a law to ensure that prospective PACE customers received accurate information about the risk of prepayment.  As the Complaint itself acknowledges, AB 2693 was enacted to "clearly identify . . . the subsequent impact such [obligations] have on existing mortgages and the consumer's ability to sell or refinance their home."  Compl. ¶ 61.  When the Legislature chose a word to convey the risk of prepayment, it did not use any of the words demanded by the Complaint: not "certain," (Compl. ¶ 26), not "virtually certain," (Compl. ¶ 110), not "almost certainly," (Compl. ¶ 113), and not "highly likely," *see* Compl. at 35.  Rather, after careful consideration, the Legislature, like the Department of Energy and the FHFA, determined that the word "may" accurately and adequately conveyed to consumers the risk that they would have to prepay their PACE obligations.  AB 2693, § 6 (as approved by Governor, June 6, 2016).  This Legislative finding destroys the central thesis of the Complaint— that presenting prepayment as something that "may" occur rather than something that was "almost certain" to occur is somehow unfair or deceptive.

Consistent with the reasoning in *Cel-Tech*, the Legislature's judgment here should be respected and the Marceys' UCL claims should be dismissed in their entirety.

**B.**     **The Marceys' UCL claims fail even if AB 2963 is not independently sufficient.**

Even if the Legislature's determination were not itself sufficient to dismiss the Marceys' UCL claims, and it is, the Marceys have not stated a claim under the unfair or fraudulent prongs of the UCL for several additional reasons:

*First*, the disclosures complained of are not "deceptive" within the meaning of the UCL's

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1    "fraudulent" prong.[7]  To establish a violation of the "fraudulent" prong, a plaintiff must show

2    statements that are likely to deceive a reasonable consumer.  *Ford v. Hotwire, Inc.*, 2008 WL

3    5874305, at *2 (S.D. Cal. Feb. 25, 2008).  "Likely" to deceive requires that deception is

4    "probable," not merely "possible."  *Id*. at *3.  The disclosures the Marceys received are not likely

5    to deceive a reasonable consumer as a matter of law.  *Id*. (dismissal is appropriate where no

6    reasonable consumer would be deceived).

7           The Marceys allege that in April 2016 they attempted to refinance and were "shocked" to

8    discover they would not be able to refinance without (1) fully satisfying the obligation and (2)

9    paying a prepayment premium.  Compl. ¶ 139.  However, both of these possibilities were

10   disclosed to the Marceys before they entered into the UAA.  One of the disclosures the Marceys

11   received stated that "in order to refinance your home loan, or for a prospective purchaser of your

12   property to obtain a loan secured by the property, you may need to remove the special-tax lien by

13   prepaying the special-tax obligation in full."  UAA ¶ 14.  In light of this disclosure, a reasonable

14   consumer would not be shocked to learn that the special-tax lien needed to be removed upon

15   refinancing.  Nor would a reasonable consumer be "shocked" to learn of the prepayment premium,

16   because it was also disclosed to the Marceys: "The Owner may prepay the Special Tax obligation

17   at any time…The prepayment may also include a prepayment premium based upon a percentage

18   of the remaining principal as defined in Exhibit B hereto."  UAA ¶ 10.  In Exhibit B—which the

19   Marceys separately signed—there is a "prepayment premium" listed just below the interest rate:

**UNANIMOUS APPROVAL AGREEMENT EXHIBIT B**

**DESCRIPTION OF ESTIMATED COSTS AND TERMS OF FINANCING**

| | | |
|---|---|---|
| INTEREST RATE: ...... 8.25 ... % | REPAYMENT TERMS: ........................... ... . years | 20 |
| PREPAYMENT PREMIUM: .. ...5.0... % | INTEREST RATE LOCK PERIOD*: 90 days from the effective date of this UAA | |

*NOTE: If you do not complete your project and request funding during the Rate Lock Period your Interest Rate may increase.*

25   UAA, Exhibit B.  The disclosure documents the Marceys signed disclosed the possibility of

26   needing to prepay in the event of a sale or refinance and the prepayment premium, and thus belie

27   ───────────────────
            [7] This conclusion also logically flows from the Legislature's unanimous approval of the

28   word "may."  Simply put, if the term were deceptive the Legislature would not have required it.

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1    the Marceys' claims to the contrary.

2        Under these circumstances, courts routinely dismiss claims of deception under the UCL's

3    "fraudulent" prong. *See, e.g.*, *Ford*, 2008 WL 5874305, at *2 ("Hotwire adequately discloses that

4    resort fees may be imposed, such that a reasonable customer is not likely to be deceived."); *Porras

5    v. StubHub, Inc.*, 2012 WL 3835073, at *4–5 (N.D. Cal. Sept. 4, 2012) ("An ordinary consumer

6    reading the terms of StubHub's FanProtect Guarantee would recognize such guarantee would not

7    exist unless there was a possibility that the tickets purchased might not be valid for entry.").

8        Other than the contractual disclosures, the Marceys only allege that they were exposed to

9    one so-called "deceptive" representation. *See* Compl. ¶ 136.  The Marceys allege that prior to

10   entering into their PACE agreement they "reviewed" Ygrene's website and undisclosed marketing

11   materials that stated that "[i]f the property is sold, the tax assessment moves with the sale to the

12   new owner." *Id.* at 133.  The Marceys do not allege exactly where this supposed

13   misrepresentation was made or what other statements were made contemporaneously thereto.

14   This deficiency alone is sufficient to dismiss this claim as the Marceys fail to allege their claim

15   beyond the "speculative level." *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th

16   Cir. 2012). [8]  Considering the allegations in the Complaint as a whole, it would be unreasonable

17   for the Marceys to believe that prepayment could never be needed: the foregoing alleged

18   misrepresentation was made *before* the Marceys reviewed their PACE agreement, which disclosed

19   the risks they now complain about.  *Davis*, 691 F.3d at 1162 ("A representation does not become

20   'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant

21   and unrepresentative segment of the class of persons to whom the representation is addressed.").

22   Indeed, in addition to the prepayment disclosure and the premium disclosure, the Marceys' PACE

23   agreement also explained that it "supersede[d] all prior or contemporaneous [] representations"

---

24       [8] The Marceys' "fraudulent" prong claim is also not pled with the level of specificity
25   required by Rule 9(b).  *Kearns*, 567 F.3d at 1124–25.  For example, the Marceys only make
     generalized allegations about where the representations to which they were exposed can be found,
26   do not allege the name or employer of the "only individual with whom [they] spoke before
     entering into" their PACE assessment, and do not allege if or how Ygrene's conduct allegedly
27   harmed them.  Compl. ¶¶ 131–133, 139–40.  Such generalized allegations require dismissal of the
     Marceys' "fraudulent" prong claim under Rule 9(b).  *Kearns*, 567 F.3d at 1124–25.
28

and that "[t]he Owner's contractual relations with lenders are the Owner's sole responsibility…" UAA ¶¶ 26, 14(b)(5).  Under these circumstances, a reasonable consumer would not have been deceived.

*Second*, the disclosures are not "unfair" within the meaning of the UCL's "unfair" prong. While the precise meaning of "unfair" is in flux in California, the Complaint fails to state a claim under any definition.  *See Davis*, 691 F.3d at1170 (describing split of authority on definition of "unfair").  To start, under the "tethering" test, the Complaint fails because the only legislative policy to which the Complaint is tethered—AB 2693—actually establishes that Ygrene's use of "may" was appropriate.  *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1192 (2012) (conduct must offend public policy tethered to a specific constitutional, statutory, or regulatory provision).

The Marceys' UCL "unfair" prong claim fails the "balancing" test for the same reasons the Marcey's "fraudulent" prong claim fails, *i.e.*, taken as a whole the Marceys do not allege that any practice of Ygrene's was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Ygrene's disclosure contained the language used by the FHFA (Compl. ¶ 50) and adopted by the California Legislature.  There can be nothing "immoral" or "unethical" about Ygrene's use of "may" when that form of disclosure has been adopted by the Legislature and the FHFA.

The Marceys' claim also fails under the "FTC" test because any injury alleged could have been reasonably avoided by reading the disclosures.  *Drum*, 182 Cal.App.4th at 257 ("FTC" test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided").

*Third*, the Marceys' UCL claims fail because they have not pled an injury-in-fact.  Under the UCL, standing extends to "a person who has suffered injury in fact and has lost money or property as a result of [] unfair competition."  Cal. Prof. & Bus. Code § 17204.  This requirement was imposed by the California electorate in 2004 when it passed Proposition 64.  "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury,

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   and (2) *show that that economic injury was the result of, i.e., caused by, the unfair business*

2   *practice*…."  *Kwikset Corp. v. Superior Court*, 51Cal. 4th 310, 322 (2011) (emphasis added).

3       Here, the Marceys do not allege that the thing they were supposedly deceived by—use of

4   the word "may" —caused them economic injury.  Rather, the Marceys allege that had they

5   "known the truth about Ygrene's [financing]—*that it is no different than a second mortgage*—

6   Plaintiffs would not have entered into an agreement through Ygrene."  Compl. ¶ 138 (emphasis

7   added).  There are two fatal flaws in Plaintiffs' injury-in-fact allegation: (1) the Marceys knew the

8   truth about Ygrene's financing program because it was disclosed to them, and (2) the Complaint

9   admits that PACE obligations are not second mortgages.  *Id.* ¶ 14 (PACE agreements "are a

10  financing structure by which residential property owners are permitted to opt into a special

11  assessment district to receive financing for energy improvements and retrofits on their homes.").

12      Put differently, the Complaint does not allege that the Marceys read the disclosures in their

13  PACE agreement and understood the word "may" in those disclosures to mean that they would

14  never have to prepay their PACE obligation and, on that basis, entered into the obligation.  *See*

15  *Kwikset*, 51 Cal. 4th at 328–29 (injury-in-fact is sufficiently alleged when the plaintiffs saw the

16  misrepresentation, relied on it for its truth, and would not have otherwise made the purchase).

17  Instead, as alleged, it was some other problem, Ygrene's failure to label the PACE assessment as a

18  "second mortgage," that caused them to enter into the PACE obligation.  Thus, as pled, the

19  Marceys have not alleged an injury-in-fact caused by an unfair business practice under the UCL.

20  **III.   The Marceys' Consumer Legal Remedies Act Claim Fails.[9]**

21      The third cause of action asserted by the Marceys in the Complaint is for alleged violations

22  of California's Consumer Legal Remedies Act ("CLRA").  Compl. ¶¶ 164–72.  This claim fails

23  for the following reasons:

24      *First*, the Marceys failed to file an affidavit "showing that [this] action [was] commenced

25  in a county described in [Cal. Civ. Code § 1780] as a proper place for the trial of the action."  Cal.

26  Civ. Code § 1780(d).  Their failure to file this affidavit concurrently with the filing of the

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

27  ───────────────

         [9] As Florida residents, the Smiths cannot state a claim for violations of the CLRA.

28  *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1096 (N.D. Cal. 2006).

Complaint necessitates dismissal of their CRLA claim in its entirety.  *Id.*; *Park-Kim v. Daikin Indus., Ltd*, 2016 WL 6744764, at *17 n. 10 (C.D. Cal. Nov. 14, 2016) (Cal. Civ. Code § 1780(d) requires that a claim pursuant to the CLRA be dismissed if the plaintiffs fail to file an affidavit with the complaint as required by § 1780(d)).

*Second*, the Marceys have not satisfied the CLRA's statutory notice requirements.  A claim for damages under the CLRA may not proceed unless a plaintiff notifies the defendant of the particular alleged CLRA violations before commencing suit.  *See* Cal. Civ. Code § 1782(b).  The statutory notice must be delivered 30 days before the filing of the complaint.  *Id*. § 1782(a).  Here, the Marceys specifically allege that they have not yet complied with this requirement.  Compl. ¶ 169 ("Counsel for Plaintiffs *will* provide proper notice of their intent to pursue claims under the CLRA …").  Thus, the Marceys have not stated a CLRA claim for damages.  *Doe 1 v. AOL LLC*, 719 F.Supp.2d 1102, 1110–11 (N.D. Cal. 2010).

Because the Marceys have not stated any claim for relief under the CLRA, their CLRA claim should be dismissed.  *See Duran v. Hampton Creek*, 2016 WL 1191685, at *8 (N.D. Cal. Mar. 28, 2016) (dismissing CLRA claim).

## IV.   The Smiths Have Not Stated a Claim Under the Florida Deceptive and Unfair Trade Practices Act.[10]

A claim for damages under the FDUTPA requires that the plaintiff "show not only that the conduct complained of was unfair, unconscionable, or deceptive, but also that [he or she] has suffered actual damages proximately caused by the unlawful conduct."  *In re Florida Cement & Concrete Antitrust Litig*., 746 F. Supp. 2d 1291, 1321 (S.D. Fla. 2010).  "Whether an alleged act or practice is deceptive or unfair may be decided as a matter of law."  *Casey v. Florida Coastal Sch. of Law, Inc.*, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11, 2015).  The Smiths' FDUTPA claim is deficient for the same reasons the Marceys' UCL claims are deficient: they have not identified any conduct that was unfair, unconscionable, or deceptive nor have they alleged that they suffered actual damages proximately caused by any unlawful conduct.

[10] Because the Marceys are not Florida residents, they cannot assert a claim under FDUTPA.  *Océ Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So.2d 1037, 1042 (Fla. Dist. Ct. App. 2000).

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

*First*, as discussed above, the FDUTPA claim must be dismissed because the language the Smiths allege is deceptive is the same language that has been adopted by the California Legislature, the FHFA, and the Department of Energy.  Indeed, Florida has also approved inclusion of the word "may" in PACE disclosures.  In Miami-Dade County, for example, a local ordinance provides that PACE agreements shall state that there is a "risk that [homeowners] *may* not be able to refinance the home or sell the home unless the Assessment is paid off in full first." Miami-Dade County Code of Ordinances, Sec. 2-2083(7) (emphasis added).  The Complaint does not cite and Ygrene has not found any Florida statute, ordinance, or case law that disagrees with the judgment of Miami-Dade County and the California Legislature that "may" adequately discloses the probability of prepayment.[11]  There is also no Florida authority supporting Plaintiffs' position that PACE financing agreements should disclose that there is an "absolute certainty" (or the like) that the PACE assessment must be paid off in the event of a sale or refinancing.

*Second*, the Smiths have not alleged a deceptive act or unfair practice within the meaning of FDUTPA.  Under Florida law, a deceptive act occurs "if there is a representation, omission, or practice that is *likely to mislead the consumer acting reasonably* in the circumstances, to the consumer's detriment.  *This standard requires a showing of probable, not possible, deception* that is likely to cause injury to a reasonable relying consumer." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (emphasis added) (citations and quotations omitted).

The Smiths allege Ygrene did not "adequately" disclose that they "almost certainly" would have to satisfy their PACE assessment should they wish to sell or refinance their home.  Compl. ¶ 123.  However, Plaintiffs' claims of deception and unfairness are belied by the disclosures made. The Smiths, like the Marceys, do not dispute that they signed numerous disclosures that explained that they may need to pay off the PACE assessment before selling or refinancing their home.  *See,*

---

[11] In Broward County, where the Smiths' property is located, there is no express requirement that the PACE agreement disclose one way or another whether the assessment needs to be paid off upon sale or refinance.  However, Broward County's PACE ordinance does require disclosures indicating that "the property improvements and PACE assessment *may* or *may* not affect the overall value of the property."  Broward County Code of Ordinances, § 20-14(b) (emphasis added).

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   *e.g.*, Compl. ¶¶ 119, 121.  Further, contrary to the Smiths' allegations, the Smiths received and

2   certified that they reviewed disclosures indicating that they would be charged a pre-payment

3   waiver fee.  *See* Smith Statement, Strothmann Decl., Ex. D.  There is no allegation in the

4   Complaint that creates a plausible inference that a reasonable consumer would not understand

5   these disclosures.  Under these circumstances, courts in Florida dismiss FDUTPA claims.  *Berry v.*

6   *Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (dismissing FDUTPA

7   claim where supposed hidden and misleading fees were disclosed at the time of the car rental);

8   *Casey*, 2015 WL 10096084, at *13 (Dismissing FDUTPA claim with prejudice because a

9   reasonable consumer would not be deceived and explaining that the "FDUTPA does not require

10  companies to be wholly transparent or prohibit them from publishing facts in the light most

11  conducive to business, as long as the publication is not probably deceptive and likely to cause

12  injury to a reasonably relying consumer.").[12]

13        *Third*, the Smiths have not alleged that any deceptive act or unfair practice proximately

14  caused them harm.  The Smiths, like the Marceys, have not alleged that they were actually

15  deceived or misled by the disclosures they complain about or that the disclosures caused them to

16  enter into their PACE agreements.  Compl. ¶¶ 116–129; *In re Florida Cement & Concrete*

17  *Antitrust Litig.*, 746 F. Supp. 2d at 1321 (plaintiff must plead proximate causation to state a

18  FDUTPA claim).  As such, the Smiths' FDUTPA claim must be dismissed.

19  **V.        Plaintiffs Have Not Stated a Claim for Fraudulent Inducement.**

20        Plaintiffs' fraudulent inducement cause of action is premised entirely on the conclusory

21  allegation that Ygrene "had a duty to disclose to Plaintiffs … that prepayment of their PACE loans

22  is certain to occur due to the GSE's refusal to purchase mortgage loans on properties encumbered

23  by PACE liens."  Compl. ¶ 187.  As discussed above, this claim fails because Plaintiffs'

24  ───────────────────

25        [12] Florida courts routinely dismiss claims under the FDUTPA that involve allegations that
could broadly be construed as "unfair" because the FDUTPA's reach is not limitless.  *See, e.g.,*
*Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364, 1368–69 (S.D. Fla. 2003) ("Plaintiff's reliance upon

26  oral statements which were at variance with the written documents were not reasonable as a matter

27  of law."); *In re Crown Auto Dealerships, Inc.*, 187 B.R. 1009, 1018 (Bankr.M.D.Fla.1995)
(dismissing FDUTPA claim against car dealership fraudulently selling previously stolen cars as

28  new).

**BUCKLEY SANDLER LLP**
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1   allegations are belied by the express language of the disclosures they received.  However, this

2   claim fails under California and Florida law for two additional reasons.

3       *First*, the disclosure that Plaintiffs allege Ygrene had a duty to disclose—that prepayment

4   was certain—is a false statement.  No allegation in the Complaint supports the claim that

5   prepayment was certain.  The Complaint itself concedes that prepayment was "highly likely," at

6   most.  *Id.* at 35.  Because Ygrene cannot have been under a duty to relay demonstrably false

7   information to Plaintiffs, their fraudulent inducement claim must fail.

8       *Second*, Plaintiffs do not plead any facts suggesting Ygrene owed them a duty of

9   disclosure.  Both California and Florida impose a duty to disclose only if there is a fiduciary

10  relationship between the parties or the defendant has sole knowledge or access to material facts

11  and knows that such facts are not known to or reasonably discoverable by the other party.

12  *Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d

13  1346, 1351 (S.D. Fla. 2005).  The Complaint does not allege the existence of a fiduciary

14  relationship, nor does it allege that Plaintiffs could not reasonably have discovered the possible

15  impact of a PACE obligation on their ability to sell or refinance their homes.  In fact, the

16  Complaint alleges this information was readily available to Plaintiffs when they entered into their

17  PACE financing agreements.  *See, e.g.*, Compl. ¶¶ 46–51, 57–62; *see also supra* Background.  In

18  the absence of such allegations, Plaintiffs cannot state a claim for fraudulent inducement under

19  California or Florida law.  *Goodman*, 18 Cal.3d at 347; *Behrman*, 388 F. Supp. 2d at 1351.

20  **VI.**    **Plaintiffs Have Not Stated a Claim for Negligent Misrepresentation.**

21      Plaintiffs have failed to state a claim for negligent misrepresentation under California or

22  Florida law for several reasons:

23      *First*, Plaintiffs have not sufficiently alleged a material misrepresentation.  At most,

24  Plaintiffs allege that Ygrene's disclosures stated that they "may" be required to prepay their

25  obligations.  However, not even the Complaint claims that this disclosure was false.  *Carroll v.*

26  *Gava*, 98 Cal. App. 3d 892, 895 (1979) ("[T]he tort of negligent misrepresentation requires the

27  making of a false statement or assertion."); *see also Halloum v. DFO, Inc.*, 2010 WL 1390924, at

28  *7 (Cal. Ct. App. Apr. 8, 2010) ("A plaintiff cannot read something into a neutral statement in

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1  order to justify a claim for negligent misrepresentation.").

2  *Second*, to the extent Plaintiffs argue that Ygrene "fail[ed] to clearly and adequately

3  advise" them or that Ygrene's supposed "omissions" caused them damage, their claim is meritless.

4  A negligent misrepresentation claim must be based on an affirmative false statement, not an

5  omission. *See, e.g.*, *Regents of Univ. of California v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037,

6  1045 (N.D. Cal. 2006) ("California negligent misrepresentation law … does not impose liability

7  for negligent omissions; some 'positive assertion' is required."); *Kahama VI, LLC v. HJH, LLC*,

8  2013 WL 6511731, at *6 (M.D. Fla. Dec. 12, 2013) (no liability for negligent misrepresentation

9  based on omissions under Florida law without a duty to disclose based on a fiduciary relationship).

10  *Third*, Plaintiffs have not alleged anything negligent about Ygrene's disclosures, *i.e.,*

11  Plaintiffs have not alleged facts suggesting a lack of reasonable care in its disclosures.  As

12  explained herein, numerous authorities including the California legislature, the Department of

13  Energy, and Miami-Dade County require or suggest that PACE agreements contain the language

14  Ygrene actually used.  If anything, the allegations in the Complaint demonstrate that Ygrene

15  intended to comply with the law, not induce unjustified reliance.

16  Accordingly, Plaintiffs' negligent misrepresentation cause of action should be dismissed.

17  **VII.   Plaintiffs Have Not Stated a Claim for Negligence.**

18  Plaintiffs' negligence cause of action restates their fraudulent inducement and negligent

19  misrepresentation claims; it too fails because the disclosure provided was accurate.  *See supra*

20  Argument Sections I-II.  Plaintiffs have not stated a cause of action for negligence under

21  California or Florida law for two more reasons.

22  *First*, Plaintiffs have not alleged any facts supporting their conclusory allegation that

23  Ygrene owed them a duty under either California or Florida law.  Neither California nor Florida

24  imposes on either party to an arms-length transaction a duty to act for the protection of the other

25  party, or to disclose facts that the other party could, by its own due diligence, have discovered.

26  *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fl. 1991); *see also Andren v. Alere,*

27  *Inc.*, 207 F. Supp. 3d 1133 (S.D. Cal. 2016).  Absent allegations of a special relationship or facts

28  suggesting Ygrene had exclusive knowledge of the possible impact of a PACE obligation on a

1   homeowner's ability to refinance or sell, there is no basis to hold Ygrene liable in negligence.  *See*

2   *id.*; *see also Green v. ADT, LLC*, 2016 WL 5339800, at *2 (N.D. Cal. Sept. 23, 2016) ("[T]he

3   threshold element of a cause of action for negligence is the existence of a duty to use due care

4   toward an interest of another that enjoys legal protection against unintentional invasion.").

5       *Second*, Plaintiffs do not identify how Ygrene's disclosure indicating they "may" have to

6   pay off their PACE assessments before selling or refinancing proximately caused them harm.  *AF*

7   *Holdings, LLC v. Doe*, 2012 WL 3835102, at *2 (N.D. Cal. Sept. 4, 2012) ("The elements of a

8   cause of action for negligence are duty, breach, proximate cause, and damages."); *see also supra*

9   Argument II.B (explaining use of the word "may" did not proximately cause Plaintiffs any harm).

10      Like Plaintiffs' other claims, their negligence claim should be dismissed.

11  **VIII.  Plaintiffs Have Not Stated a Claim for Unjust Enrichment.**

12      Plaintiffs' claim for unjust enrichment similarly fails:

13      *First*, "there is no cause of action in California for unjust enrichment."  *Melchior v. New*

14  *Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003); *see also Forever 21, Inc. v. Seven Lions*

15  *Inc.*, 2012 WL 12888694, at *2 (C.D. Cal. Oct. 18, 2012) ("the overwhelming trend in the most

16  recent case law has been to dismiss a separate unjust enrichment cause of action").  While the

17  Ninth Circuit recently held that a cause of action of unjust enrichment under certain circumstances

18  may proceed as a cause of action for "quasi-contract," this is not such a case.  *Astiana v. Hain*

19  *Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[A] court may construe the cause of

20  action as a quasi-contract claim seeking restitution.) (citations and quotations omitted).  Here, the

21  Plaintiffs allege that there are valid, express contracts connected to this dispute.  *See, e.g.*, Compl.

22  ¶ 134.  A quasi-contract claim is improper where the plaintiff alleges a valid express contract

23  covering the same subject matter as the unjust enrichment claim.  *Gerlinger v. Amazon.Com, Inc.*,

24  311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (dismissing an unjust enrichment cause of action based

25  on alleged overpayments where the buyer and seller had an express contract); *Hill v. Nagpal*, 2013

26  WL 246746, at *5 (S.D. Fla. Jan. 22, 2013) ("It is well settled that the law will not imply a

27  contract where an express contract exists concerning the same subject matter.").

28      *Second*, Plaintiffs' unjust enrichment claim must be dismissed because they have chosen to

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL. (310) 424-3900 • FAX (310) 424-3960

1  sue in tort based on the same allegations as the unjust enrichment claim.  Compl. ¶¶ 213–218.  An

2  unjust enrichment claim is incompatible with a claim in tort.  *Top Agent Network, Inc. v. Zillow*,

3  *Inc.*, 2015 WL 7709655, at *8 (N.D. Cal. Apr. 13, 2015) (dismissing an unjust enrichment cause

4  of action where the plaintiff brought statutory and tort claims based on the same underlying

5  conduct as its unjust enrichment claim); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111,

6  1133 (N.D. Cal. 2009) (a claim for unjust enrichment is inconsistent and incompatible with a

7  related claim for breach of contract or a claim in tort).

8       *Third*, Plaintiffs' unjust enrichment claim must be dismissed because it is superfluous of

9  their other causes of action—merely incorporating allegations from other causes of action and

10  concluding that the defendant was "unjustly enriched" is insufficient to state a plausible claim for

11  relief.  *Dickey v. Advanced Micro Devices, Inc.*, 2016 WL 1375571, at *8 (N.D. Cal. Apr. 7, 2016)

12  (dismissing plaintiff's unjust enrichment claim because it rested on allegations covered by other

13  claims); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 and n.2 (S.D. Fla. Dec. 5,

14  2013) (unjust enrichment claim failed as a matter of law because it was duplicative of other causes

15  of action regardless of whether other causes of action had merit); Compl. ¶ 206 (alleging unjust

16  enrichment by incorporating the other allegations in the complaint).

17       Because Plaintiffs' unjust enrichment cause of action has numerous fatal deficiencies

18  under California and Florida law, it should be dismissed.

19  **<u>CONCLUSION</u>**

20       For all of the foregoing reasons the Court should dismiss the Complaint in its entirety.

21

22  DATED:  April 18, 2017        BUCKLEY SANDLER LLP

23       By:   */s/ Fredrick S. Levin*

24       Fredrick S. Levin
     *Attorneys for Defendants Ygrene Energy*

25       *Fund, Inc. and Ygrene Energy Fund Florida, LLC*

26

27

28