**BUCKLEY SANDLER LLP**
FREDRICK S. LEVIN (State Bar No. 187603)
flevin@buckleysandler.com
DANIEL R. PALUCH (State Bar No. 287231)
dpaluch@buckleysandler.com
ALI M. ABUGHEIDA (State Bar No. 285284)
aabugheida@buckleysandler.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

*Attorneys for Defendants Ygrene Energy Fund,*
*Inc. and Ygrene Energy Fund Florida, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GRACHIAN L. SMITH, MARY JANE SMITH, ALEJANDRO MARCEY, and FELICIA MARCEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YGRENE ENERGY FUND, INC.; YGRENE ENERGY FUND FLORIDA, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:17-cv-01258<br><br>**DECLARATION OF LAURA STROTHMANN IN SUPPORT OF MOTION TO DISMISS**<br><br>[Filed concurrently with Defendants Ygrene Energy Fund, Inc. and Ygrene Energy Fund Florida, LLC's Motion to Dismiss for Failure to State a Claim]<br><br>Date:      May 25, 2017<br>Time:      9:30 a.m.<br>Crtrm.:    C - 15th Floor<br><br>The Hon. Magistrate Judge Laurel Beeler |

*Left margin (vertical text):* BUCKLEY SANDLER LLP · 100 WILSHIRE BOULEVARD, SUITE 1000 · SANTA MONICA, CALIFORNIA 90401 · TEL (310) 424-3900 • FAX (310) 424-3960

BUCKLEY SANDLER LLP
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

## DECLARATION OF LAURA STROTHMANN

I, Laura Strothmann, hereby declare as follows:

1.     I am a Senior Operations Coordinator at Ygrene Energy Fund, Inc.  I have been working at Ygrene Energy Fund, Inc. since 2015.  I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to each fact. I can competently testify to the matters stated herein based on my experience, my job responsibilities, and based on my review of the relevant documentation.   I submit this declaration in support of Defendants' concurrently filed motion to dismiss.

2.     As Senior Operations Coordinator in the regular performance of my job functions, I am familiar with the business records maintained by Ygrene Energy Fund, Inc., Ygrene Energy Fund California, LLC, and Ygrene Energy Fund Florida, LLC (collectively "Ygrene") for the purposes of recording and documenting agreements with Ygrene's customers.  It is Ygrene's policy that all Ygrene documents, including all agreements with Ygrene's customers, are made or received and retained at or near the time of creation by persons with knowledge of the activity, and are made and kept in the course of business activity regularly conducted by Ygrene.  Ygrene relies on the accuracy of the documents it maintains in the conduct of its day to day business.

3.     Attached hereto as **Exhibit A** is a true and correct copy of the "Unanimous Approval Agreement" entered into by Plaintiffs Alejandro and Felicia Marcey and the City of Chula Vista, California on August 26, 2015.

4.     Attached hereto as **Exhibit B** is a true and correct copy of the "Agreement to Pay Assessments and Finance Qualifying Improvements" signed by Plaintiff Grachian Smith on September 28, 2016.

5.     Attached hereto as **Exhibit C** is a true and correct copy of the "Notice of Rights and Responsibilities for Property Owners in the Clean Energy Green Corridor PACE District" signed by Plaintiff Grachian Smith.

6.     Attached hereto as **Exhibit D** is a true and correct copy of the "Estimated Settlement Statement" signed by Plaintiff Grachian Smith on November 28, 2016.

I declare under penalty of perjury under the laws of the United States of America that the

1    foregoing is true and correct.

2         Executed at Petaluma, California on April 17, 2017

3

4

5                                                     Laura Strothmann

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*BUCKLEY SANDLER LLP*
100 WILSHIRE BOULEVARD, SUITE 1000
SANTA MONICA, CALIFORNIA 90401
TEL (310) 424-3900 • FAX (310) 424-3960

# EXHIBIT A



www.CleanEnergyChulaVista.com

Community Facilities District No. 2013-01 (Clean Energy),

City of Chula Vista, State of California

# UNANIMOUS APPROVAL AGREEMENT

This Unanimous Approval Agreement, dated . . . . . **08/26/2015** . ., for purposes of identification only, is between the City of Chula Vista, a California municipal corporation (the **"Jurisdiction"**), and all of the persons or entities identified below as owners of the real property identified herein (collectively, the **"Owner"**)

| | | |
|---|---|---|
| **Owner No. 1:** | Alejandro | Marcey |
| **Owner No. 2:** | FELICIA | MARCEY |
| **Owner No. 3:** | | |
| **Owner No. 4:** | | |
| **Trust:** | | |
| **Legal Entity:** | | |

| | | |
|---|---|---|
| **Project ID No.:** CA-21-QZC672 | **APN:** 620-470-11-00 | |
| **Property Street Address:** 1172 NOLAN AVE | | |
| **City:** CHULA VISTA | **State:** CA | **Zip:** 91911 |

## Background

A. In connection with its Clean Energy Program (the **"Program"**), the Jurisdiction has established *Community Facilities District No. 2013-01 (Clean Energy), City of Chula Vista, County of San Diego, State of California* (the **"CFD"**) for the purpose of levying special taxes against certain developed properties in the Jurisdiction. The tax revenues will be used to finance, refinance, or lease the acquisition and installation on those properties of qualifying renewable-energy systems and energy- and water-efficiency improvements

B. The CFD was formed by the Jurisdiction under the Mello-Roos Community Facilities Act of 1982, set forth in sections 53311 through 53368.3 of the California Government Code (the **"Act"**), and particularly under sections 53313.5(l) and 53328.1, which the California Legislature added to the Act in 2011 to promote energy- and water-efficiency improvements needed to address global climate change (see Statutes 2011, chapter 493 (Senate Bill No. 555)) As the Legislature declared in the Act. "a public purpose will be served by providing the legislative body of a local agency with the authority to use special taxes as are affixed, as specified in section 660 of the Civil Code. to residential, commercial, industrial, or other property " The purpose and method of administration of the special taxes under the CFD are further described in the CFD Hearing Report submitted to the City Clerk in conjunction with the public hearing concerning the formation of the CFD held by the Chula Vista City Council on December 10, 2013, as it may be amended from time to time (the **"Report"**)

C. The Jurisdiction has contracted with Ygrene Energy Fund California, LLC (the **"Program Administrator"**) to administer the Program and to fund the acquisition and installation of qualifying renewable-energy systems and energy- and water-efficiency improvements through the CFD for the duration of the contract.

D. To participate in the Program, a property must annex to the CFD The Act permits annexation to the CFD only with the unanimous approval of all of the property's owners. One purpose of this Unanimous Approval Agreement is to memorialize the unanimous approval required by the Act, but this agreement also specifies the terms under which the Property (as defined in paragraph E below) will participate in the Program



E.     Owner holds title to the real property described above (the **"Property"**) and has submitted an application to participate in the Program (the **"Application"**) Among other things, the Application directs the Owner to review the list of renewable-energy systems, water-efficiency improvements, and energy-efficiency improvements set forth in the Report and authorized to be financed through the Program, and Owner will select from the list the systems and improvements to be installed on the Property The selected systems and improvements, together with their acquisition and installation on the Property, are referred to as the "Improvements "

F.     The Owner wishes to participate in the Program by entering into this agreement with the Jurisdiction and using the moneys advanced by the Program Administrator to finance, refinance, or lease the Improvements.

With these background facts in mind, the Jurisdiction and the Owner agree as follows:

1.     **Contract Documents.** This agreement and the documents attached to it as exhibits, together with the Application, are collectively referred to as the **"Contract Documents."** All of the Owner's declarations and warranties in the Application are incorporated into this agreement

2.     **Term.** The term of this agreement begins on the date, after the Jurisdiction and the Owner have signed this agreement, when the Notice of Special Tax Lien, substantially in the form attached to this agreement as Exhibit A (the **"Notice of Special Tax Lien"**), is recorded against the Property (the **"Effective Date"**) in the records of the office of the Clerk/Recorder for the County within which the Property is located (the **"County"**) The term of this agreement ends when the entire special-tax obligation (as described in section 7(a), below), plus any applicable penalties, costs, fees, and other charges, has been paid in full.

3.     **Special Tax and Lien.**

    (a)     As of the Effective Date, the Property will be annexed to the CFD for all purposes and will be subject to the annual special tax that will be levied against the Property in accordance with the terms of the CFD, this agreement, the Act, and any other applicable law and will be secured by the special-tax lien imposed by the recorded Notice of Special Tax Lien (the **"Special Tax"**) The Owner hereby consents to the levy of the Special Tax on, and to the recordation of the Notice of Special Tax Lien against, the Property

    (b)     Failure to pay any installment of the Special Tax, like failure to pay any property taxes on the Property, will result in penalties and interest accruing on the amounts due. In addition, the Jurisdiction or a trustee acting in the Jurisdiction's name may foreclose on the lien of any delinquent Special Tax plus penalties, interest, and costs, as set forth in section 7(d) below as provided in the Act. In that regard, the Jurisdiction and the Owner hereby agree that the obligation to pay the Special Tax is for the purpose of repaying funds advanced under the Program to the Owner or on the Owner's behalf; that this agreement constitutes the Owner's binding obligation to pay or repay a sum of money through the payment of the Special Tax; and that this agreement thus memorializes a "debt" for purposes of sections 53317(d) and 53356.1 of the Act

4.     **Disbursement Amount.** The Jurisdiction shall authorize disbursement of moneys to the Owner or on the Owner's behalf based on the amount of the actual cost of the Improvements (the **"Disbursement Amount"**), subject to this limit: the Disbursement Amount may not exceed

    . . . . . . . . . . . .     **$48,396.00**     (the **"Maximum Disbursement"**) The Program Administrator will determine the Disbursement Amount based on invoices and other relevant documents submitted by the Owner. The Owner's use of the Disbursement Amount is limited as described in section 8, below. If the actual cost of the Improvements exceeds the Maximum Disbursement, then the Owner will be solely responsible for the payment of all improvement-completion costs that exceed the Maximum Disbursement and shall complete the Improvements and fund all costs that exceed the Maximum Disbursement.

5.     **Authorization of Special Tax, Indebtedness, and Appropriations Limit.** The Owner acknowledges that this agreement constitutes the Owner's election to annex the Property to the CFD, to authorize the Special Tax and the debt described in section 3(b) above, and to establish the contribution of the Property towards the appropriations limit for the CFD (as defined by section 8(h) of Article XIIIB of the California Constitution) The Owner hereby waives any notice, protest, and hearing procedures and provisions of any law other than the Act with respect to the annexation of the Property, the levy and collection of the Special Tax, the authorization of debt, or the establishment of the appropriations limit. The Owner further acknowledges that the annexation, the Special Tax, the debt, and the appropriations limit are being authorized on the Property at the Owner's request, and the Owner waives any right to contest the annexation, the authorization of Special Tax or the debt, the establishment of the appropriations limit, or the imposition of the Special Tax in accordance with this agreement

6.     **Commencement and Completion of Improvements.**

    (a)     Consent and Authorization. This agreement constitutes consent and authorization for the Owner to purchase directly the related equipment and materials for the Improvements and to contract directly for the installation of the Improvements on the Property.

    (b)     Date of completion of the Improvements. Subject to section 17(g) below, the Owner shall complete installation of the Improvements no later than 180 days after the Effective Date unless the Improvements cost $500,000 or more and the Owner and the Program Administrator have agreed on a later completion date. The Owner and the Program Administrator may agree to an extension of the completion date for good cause shown.

7.     **Collection of Special Tax on Property Tax Bill; Other Remedies.**

    (a)     Annual installments of the Special Tax will be collected through the property-tax bill for the Property The Special Tax will be payable and become delinquent and will bear the same penalties and interest after delinquency, at the same times and in the same manner, and in the same installments, as general taxes on real property within the Jurisdiction are payable. The amount of the Special Tax that will be placed on the tax roll each year is set forth in Exhibit B to this agreement. In accordance with California Law, delinquent Special Taxes bear late charges and interest at the same rates that apply to delinquent ad valorem taxes.

    (b)     The Special Tax lien will be coequal to, and independent of, the lien for general taxes and, except as provided in California Government Code section 53936, will not be subject to extinguishment by the sale of the Property on account of the nonpayment of any taxes The Special Tax lien will be prior and superior to all liens, claims, and encumbrances on or against the Property except (1) the lien for general taxes or ad valorem assessments in the nature of taxes that are levied and collected by the State of California or by any county. city, special district, or other local agency; (2) the lien of any special assessment or assessments; (3) easements constituting servitudes upon or burdens to the Property; (4) water rights, the record title to which is held separately from the title to the Property; and (5) restrictions of record.

    (c)     The Special Tax may include an amount to pay costs that are incurred by the County in the collection of taxes for the CFD, the Jurisdiction, or the Program Administrator in connection with the following administration and collection of the Special Tax; administration of the CFD; administration of the debt or financing arrangement, as described in the Report; or administration of any reserve fund and other related funds.

    (d)     As a cumulative remedy, if any installment of the Special Tax or any related interest, penalties, costs (including reasonable attorneys' fees), or other charges accruing under applicable taxation provisions are not paid when due, then the Jurisdiction or the Program Administrator on behalf of the Jurisdiction may order that the same be collected by an action brought by the Jurisdiction or by the Program Administrator in the name of the Jurisdiction in the Superior Court of the County within which the property is located to foreclose the lien of the Special Tax to the extent permitted by, and in the manner provided by, applicable law



DocuSign Envelope ID: C45B2B22-BCD0-4EC8-BDEF-ADDBEDBF1DD1
Case 3:17-cv-01250-LB Document 19-1 Filed 04/18/17 Page 7 of 41

www.CleanEnergyChulaVista.com

(e)    The Jurisdiction intends to have all Special Tax revenues the County collects (including any interest, late charges, delinquent interest, and other charges allowed by law) remitted directly to a trustee who will receive and hold the revenues for the benefit of the Program Administrator and disburse the revenues in accordance with the Program Administrator's instructions.

**8.**    **Use of Proceeds.** The Owner shall use the Disbursement Amount in compliance with all requirements of the Contract Documents and for the sole purpose of paying the reasonable costs and expenses of the Improvements, including the costs of energy audits, architectural and engineering fees, insurance costs, prepaid or amortized interest, Program costs, and other costs as may be approved by the Jurisdiction and the Program Administrator

**9.**    **Disbursement Procedures.**

(a)    Notwithstanding anything to the contrary elsewhere in this agreement, no funds will be disbursed to the Owner or on the Owner's behalf unless and until the Program Administrator determines that each of the following conditions has been satisfied, except that the Program Administrator may, with the Jurisdiction's approval, expressly waive one or more of these conditions in writing on the Jurisdiction's behalf:

    (1)    The Program Administrator has received a written request to disburse the Disbursement Amount.

    (2)    The Program Administrator (A) has received written confirmation from the Jurisdiction's Community Development Department (Building Division), or the department performing building inspection services for the Jurisdiction, that the Improvements have been completed in accordance with the building permit; or (B) has established, with the Jurisdiction's approval, criteria for processing progress disbursements, and those criteria have been satisfied.

    (3)    If requested, the Program Administrator has received from the Owner and, if applicable, from the contractor or contractors that installed the Improvements, a document certifying that installation is complete and setting forth the actual cost of the Improvements. The certification must be acceptable to the Program Administrator in form and substance.

    (4)    The Program Administrator has received such other documents as the Program Administrator may require, including, if applicable, documents required by consumer-protection laws, the sworn statements of contractors, and releases or waivers of liens, all in compliance with applicable law.

    (5)    The Owner has, as appropriate, signed and delivered to the Program Administrator the Contract Documents and such other documents pertaining to the Disbursement Amount or the Improvements as the Program Administrator may reasonably require.

    (6)    The Program Administrator has determined that, as of the date of disbursement, the Owner's representations in the Contract Documents are true and that no Default (defined in section 17 below) has occurred and is continuing.

    (7)    As of the date of the disbursement, no stop payment or mechanic's lien notice pertaining to the Improvements has been filed and remains in effect, except such as will be removed through a close of an escrow that includes the payment of some or all of the Disbursement Amount.

    (8)    If required, the Program Administrator has received a title policy, paid for by the Owner, with regard to the funds to be disbursed to the Owner

(b)    The Program Administrator will notify the Jurisdiction when all of the conditions described in section 9(a) above have been satisfied or waived, and the Jurisdiction will have three business days after receipt to review the notice. The Program Administrator will disburse the funds as soon as practicable following the end of the three-day review period unless the Jurisdiction has objected to one or more of the determinations or waivers set out in the notice.

**10.**    **Prepayment of Special Tax Obligation.** The Owner may prepay the Special Tax obligation at any time by paying the then outstanding principal balance as shown on the amortization schedule provided with the Final Closing Statement, plus reasonable administrative costs and the current year's installment of the Special Tax that appears on the property tax bill. The prepayment may also include a prepayment premium based upon a percentage of the remaining principal as defined in Exhibit B hereto. The Special Tax obligation may only be prepaid in full.

**11.**    **The Owner's Representations and Warranties.** Based on the Owner's actual knowledge after a reasonable investigation, the Owner represents and warrants that each of the statements set forth in sections 11(a) through 11(f) below is true and complete as of the Effective Date. By accepting the Disbursement Amount, the Owner is deemed to have reaffirmed, as of the date of disbursement, the truth and completeness of the statements in sections 11(a) through 11(f) and of each declaration the Owner makes in the Application. If the Owner is one or more trustees of a trust, then the following statements also pertain to the trustor or trustors of the trust

(a)    *Formation; Authority.* Each person who signs this agreement (other than the Jurisdiction's signatory) represents the following:

    (1)    The signature page of this agreement identifies all persons and entities holding title to the Property

    (2)    The Contract Documents are binding upon, and enforceable against, the Owner in accordance with their terms.

    (3)    No consent or approval of any third party is required for the Owner's execution of the Contract Documents or the Owner's performance of its obligations under the Contract Documents except for the consents and approvals, if any, that the Owner has already obtained

    (4)    If the person is signing for himself or herself, then he or she is authorized and able to perform the Owner's obligations under the Contract Documents and under all other documents the Owner delivers to the Jurisdiction or the Program Administrator in connection with the Contract Documents.

    (5)    If the person is signing on behalf of a corporation, partnership, limited-liability company, or other entity that is not a natural person, then (A) he or she is authorized to sign and deliver this agreement on that entity's behalf; (B) the entity for which he or she signs is authorized and able to perform the Owner's obligations under the Contract Documents and under all other documents the Owner delivers to the Jurisdiction or the Program Administrator in connection with the Contract Documents, and (C) the entity has complied with all laws and regulations concerning its organization and existence and the transaction of its business and is in good standing in each state in which it conducts its business.

(b)    *Compliance with Law.* Neither the Owner nor the Property is in violation of, and the terms and provisions of the Contract Documents do not conflict with, any regulation or ordinance, any order of any court or governmental entity, or any building restrictions or governmental requirements affecting the Property

(c)    *Other Information.* All documents, information, and forms of evidence that have been delivered to the Program Administrator in connection with the Owner's application for Program funding are accurate and sufficiently complete to provide accurate and complete knowledge of their subject matter.

(d)    *Lawsuits.* There are no lawsuits, tax claims, actions, proceedings, investigations, or other disputes pending or threatened against the Owner or the Property that may impair the Owner's ability to perform its obligations under this agreement or may impair the Jurisdiction's ability to levy and collect the Special Tax or any other amounts owing under the Program.



**UNANIMOUS APPROVAL AGREEMENT**
DOC ID CA.CHULA 2.1

01 15 2015   |   **3**

(e)    *No Event of Default.* There is no event that is, or with notice or lapse of time or both would be, a Default (defined in section 17 below) under this agreement.

(f)    *Accuracy of Declarations.* The Owner's declarations in the Application are true and complete.

**12.    The Owner's Covenants.**

(a)    *Installation and Maintenance of Improvements.* The Improvements must be installed by contractors on the Program Administrator's list of Certified Contractors unless the Program Administrator. In writing and with the Jurisdiction's approval, authorizes the Owner to install the Improvements. The Owner shall cause its contractor or contractors to do the following: promptly obtain all required building permits, thereafter promptly begin installation the Improvements and diligently continue the work to completion, in a good and workmanlike manner and in accordance with sound installation practices. The same standard applies if the Owner installs the Improvements. The Owner shall maintain the Improvements in good condition and repair.

(b)    *Compliance with Law.* The Owner shall complete all Improvements, or cause the Improvements to be completed, in conformity with all applicable laws, including all applicable federal, state, and local occupation, safety, and health laws, rules, regulations, and standards. The Owner shall comply with and keep in effect all permits, licenses, and approvals required to install and operate the Improvements.

(c)    *Site Visits.* The Owner hereby grants to the Jurisdiction's and the Program Administrator's agents and representatives the right to enter and visit the Property at any reasonable time, after giving reasonable notice to the Owner, for the purpose of observing the Improvements. The agents and representatives will make reasonable efforts, during any site visit, to avoid interfering with Owner's use of the Property. The Owner shall also allow the Jurisdiction's and the Program Administrator's agents and representatives to examine and copy the Owner's records and other documents that relate to the Improvements. Any site visit, observation, or examination under this section 12(c) will be solely for the purposes of protecting the Jurisdiction's rights under the Contract Documents and shall not result in any responsibility or obligation of the Jurisdiction with respect to the Improvements.

(d)    *Protection Against Lien Claims.* The Owner shall promptly pay or otherwise discharge any claims and liens for labor done and materials and services furnished to the Property in connection with the Improvements. The Owner may contest in good faith any claim or lien but must do so diligently and without delay in completing the Improvements.

(e)    *Notice to Successors in Interest.* The Owner shall provide any subsequent purchaser of the Property with written notice that the Property is subject to the Special Tax lien.

(f)    *Insurance.* If the Maximum Disbursement exceeds $60,000, then the Owner shall provide, maintain, and keep in force at all times, until the Improvements are completed, a policy of builder's "all risk" property-damage insurance on the Property, with a policy limit equal to the amount of the Maximum Disbursement. Alternatively, the Owner may require that each Certified Contractor installing the Improvements provides, maintains, and keeps such insurance in force. Upon request, the Owner shall provide the Program Administrator with documents (e.g., a certificate of insurance) confirming compliance with this section 12(f).

(g)    *Notices.* Owner shall promptly notify Program Administrator in writing of any Default (defined in section 17 below) under this agreement and of any event that, with notice or lapse of time or both, would constitute a Default.

**13.    Mechanic's Lien and Stop Notices.** If a stop notice or a mechanic's lien related to the Improvements is filed or recorded in accordance with California law, then the Program Administrator may summarily refuse to disburse any funds to the Owner. In addition, if the Owner fails to furnish the Program Administrator with a bond causing such notice or lien to be released within ten days of notice from the Program Administrator to do so, then that failure will constitute a Default under this agreement (see section 17 below). The Owner shall promptly deliver to the Program Administrator copies of all such notices or liens.

**14.    Owner Responsibility; Indemnification.**

(a)    The Owner acknowledges that the Jurisdiction has established the Program solely for the purpose of assisting the owners of property in the Jurisdiction with financing for the acquisition and installation of qualifying renewable-energy systems and energy- and water-efficiency improvements. The Program is a financing program only. The Jurisdiction; the Jurisdiction's officers, employees, or agents; and the Program Administrator are not responsible for the selection of the Improvements or for the installation, performance, or maintenance of the Improvements. Any issues related to installation, performance, or maintenance of the Improvements should be discussed with the Owner's contractors and with the manufacturers or distributors of the Improvements.

(b)    **SOLE RESPONSIBILITY TO DEAL WITH LENDERS.**

The Owner authorizes the Program to send a *Notice to Lender of Proposed Special Tax* to each mortgage lender that holds a note or alternative debt instrument secured by a lien on the property (the "Notice"). It will notify lenders that the Owner intends to authorize the recordation of a special-tax lien against the property.

Please note the following:

1)    When the Owner annexes the property to the CFD and enters into a Unanimous Approval Agreement with the Jurisdiction, a special-tax lien will be imposed on the property.

2)    By law, the special-tax lien will be co-equal with the lien for general property taxes. It thus will be superior to the lien of any existing deed of trust the Owner may have previously executed in favor of a mortgage lender.

3)    Existing mortgage lenders may contend that by entering into the Unanimous Approval Agreement the Owner has violated the loan agreements or deeds of trust.

4)    The fact that the Program sent the Notice will not preclude the lenders from later alleging that the Owner has violated the loan agreements with them, and there is a risk that the lenders may prevail in any litigation over the alleged violation.

5)    Neither the Jurisdiction nor the Program Administrator can advise the Owner about any loan agreements with lenders. The Owner's contractual relations with lenders are the Owner's sole responsibility. Owners must understand that use of the Notice does *not* mean:

(a)    that any issue regarding obligations resulting from private loan documents have been resolved;

(b)    that the Owner's lenders cannot take action against the Owner if they believe loan agreements have been violated; or

(c)    that the Jurisdiction or the Program Administrator will assist the Owner in any way if lenders take such action.

| ........................ | ........................ | ........................ | ........................ |
| PO NO.1 INITIALS | PO NO.2 INITIALS | PO NO.3 INITIALS | PO NO.4 INITIALS |



UNANIMOUS APPROVAL AGREEMENT       01 15 2015       **4**
DOC ID: CA CHULA 2.1

(c)    Many banks that make home loans desire to preserve the option to sell those loans to U.S. government-sponsored enterprises (called "GSEs") that are regulated by the Federal Housing Finance Agency ("FHFA"). The FHFA appears to have instructed its GSEs not to purchase home loans where there is a superior lien for clean-energy improvements, such as the special-tax lien. Thus, in order to refinance your home loan, or for a prospective purchaser of your property to obtain a loan secured by the property, you may need to remove the special-tax lien by prepaying the special-tax obligation in full. You thus should consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the special-tax obligation, in deciding whether to annex your property to the district.

(d)    To the maximum extent permitted by law, the Owner shall indemnify, defend, protect, and hold harmless the Jurisdiction and the Jurisdiction's officers, employees, and agents (collectively, the "Jurisdiction Parties"), as well as the Program Administrator, from and against all liabilities, claims, demands, damages (including consequential damages), and costs (including all reasonable out-of-pocket litigation costs and reasonable attorneys' fees through final resolution on appeal) that are related directly or indirectly to, or arise in any way out of, or in connection with, any fact, circumstance, or event related to the approval of the Disbursement Amount or the payment to the Owner of the Disbursement Amount, including any of the following: the Contract Documents; the Owner's performance of (or failure to perform) its obligations under the Contract Documents; the Owner's breach or Default (see section 17 below) under the Contract Documents; disbursement of the Disbursement Amount; the selection, acquisition, installation, operation, or maintenance of the Improvements; the levy and imposition of the Special Tax; and the imposition of the Special Tax lien. The Owner's obligations under this section 14(b) apply whether they accrue or are discovered before or after the disbursement of the Disbursement Amount to the Owner or the Owner's designee.

(e)    The indemnity obligations described in this section 14 will survive the disbursement of the Disbursement Amount to the Owner or the Owner's designee, the payment of the Special Tax obligation in full, the transfer or sale of the Property by Owner, and the termination of this agreement.

**15.    Waiver of Claims.**

(a)    Acting for itself, for its successors-in-interest to the Property, and for anyone claiming by, through, or under the Owner, the Owner hereby waives the right to recover from, and fully and irrevocably releases the Jurisdiction Parties and the Program Administrator from, all claims, obligations, liabilities, causes of action, or damages, including attorneys' fees and court costs, that the Owner may now have or later acquire against any of the Jurisdiction Parties or the Program Administrator, and accruing from, or related to, any of the following:

(1)    the Contract Documents;

(2)    the advance of or failure to advance the Disbursement Amount;

(3)    the levy and collection of the Special Tax;

(4)    the imposition of the Special Tax lien;

(5)    the issuance and sale of any bonds or other evidences of indebtedness, or other financial arrangements entered into by the Jurisdiction or the Program Administrator pursuant to the Program;

(6)    the performance of the Improvements;

(7)    the Improvements;

(8)    any damage to or diminution in value of the Property that may result from installation or operation of the Improvements;

(9)    any personal injury or death that may result from installation or operation of the Improvements;

(10)    the selection of manufacturers, dealers, suppliers, contractors, or installers, or their action or inaction with respect to the Improvements;

(11)    the merchantability and fitness of the Improvements for any particular purpose, use, or application;

(12)    the amount of energy or water savings resulting from the Improvements;

(13)    the workmanship of any third parties; and

(14)    any other matter with respect to the Program.

(b)    This release includes claims, obligations, liabilities, causes of action, and damages of which the Owner is not currently aware or which the Owner does not suspect to exist, and which, if known by the Owner, would materially affect the Owner's release of the Jurisdiction Parties or the Program Administrator or both.

(c)    The Owner hereby acknowledges that it has read and is familiar with California Civil Code section 1542 ("Section 1542"), which is set forth below:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

By initialing below, the Owner hereby waives the provisions of Section 1542 solely in connection with the matters that are the subject of the foregoing waivers and releases.



.................................  .................................  .................................  .................................
PO NO.1 INITIALS      PO NO.2 INITIALS      PO NO.3 INITIALS      PO NO.4 INITIALS

(d)    The Owner's waivers and releases in this section 15 will survive the disbursement of the Disbursement Amount, the payment of the Special Tax obligation in full, the Owner's transfer or sale of the Property, and the termination of this agreement. The Owner's waivers and releases in this section 15 apply to the Owner's successors-in-interest to the Property and to anyone claiming by, through, or under the Owner.

**16.    Further Assurances.** The Owner shall execute any additional documents that are consistent with this agreement, including documents in recordable form, as the Jurisdiction or the Program Administrator may from time to time find necessary or appropriate to effectuate its purposes in entering into this agreement and disbursing funds to the Owner.

17.  **Events of Default.**

   (a)   Remedies with respect to the nonpayment of the Special Tax or any other amounts payable by the Owner under this agreement are governed by section 3 above and California law, including the Act.

   (b)   The failure of any of the Owner's representations or warranties to be correct in all material respects, or the Owner's failure to perform or delay in performing any of its obligations under the Contract Documents (other than failures or delays with respect to payment of the Special Tax or any other amount payable by the Owner), will each constitute a non-monetary default (each, a "Default") Upon receiving a notice of Default given under section 17(c) below, the Owner shall immediately start to cure the Default and shall complete the cure with reasonable diligence, but in any event no later than the time set forth in section 17(c)

   (c)   If a Default occurs, then before exercising any rights or remedies under the Contract Documents or California law, including the Act, the Program Administrator, on the Jurisdiction's behalf, must give the Owner a written notice of Default. If the Default is reasonably capable of being cured within 30 days, then the Owner will have 30 days after receiving the notice to effect a cure before the Jurisdiction may exercise any rights or remedies. If the Default is reasonably capable of being cured, but not within 30 days, and if the Owner begins corrective action within 30 days after receiving the notice and diligently, continually, and in good faith works to complete the cure as soon as is practicable, then the Owner will have such additional time as is reasonably necessary to cure the Default before the Jurisdiction may exercise any rights or remedies. In no event, however, will the Jurisdiction be precluded from exercising any rights or remedies if its security becomes or is about to become materially jeopardized by the Owner's failure to cure a Default or if the Default is not cured within 120 days after the first notice of Default is given.

   (d)   If a Default occurs, then, subject to section 17(c) above, the Jurisdiction may exercise any or all of the rights and remedies available to it under applicable law, at equity, or as otherwise provided in this agreement. If, at the time of the Default, there has been no disbursement of the Disbursement Amount, then the Jurisdiction may elect to terminate this agreement, and, except as otherwise expressly provided in this agreement, upon such termination the parties will have no further obligations or rights under this agreement.

   (e)   All costs and expenses the Jurisdiction or the Program Administrator incurs in pursuing its remedies under this agreement will be additional indebtedness of the Owner

   (f)   Except as otherwise expressly stated in this agreement or as otherwise provided by applicable law, the Jurisdiction's rights and remedies are cumulative, and the exercise of one or more of those rights or remedies will not preclude the exercise, at the same time or different times, of any other rights or remedies for the same Default or any other Default. The Jurisdiction's failure or delay in asserting any of its rights and remedies as to any Default will not operate as a waiver of any Default or of any such rights or remedies and will not deprive the Jurisdiction of its rights to institute and maintain any actions or proceedings it may consider necessary to protect, assert, or enforce its rights or remedies.

   (g)   With respect to the installation of the Improvements only, the performance of the Owner's covenants under this agreement and the compliance of conditions imposed upon the Owner by this agreement will be excused while and to the extent that the Owner, through no fault or negligence of its own, is prevented from performing or complying by war, riots, strikes, lockouts, action of the elements, accidents, or acts of nature beyond the Owner's reasonable control. But the excused covenants or conditions will be restored to full force as soon as the cause or event preventing compliance is removed or ceases to exist, and the Owner shall immediately resume installation of the Improvements.

18.  **Severability.** Each provision of this agreement is a separate and independent covenant and agreement. If any non-material provision of this agreement or the application of that provision is held to be invalid or unenforceable in whole or part, then the remainder of this agreement, or the application of that provision to circumstances other than those to which it is invalid or unenforceable, will remain valid and fully enforceable.

19.  **Notices.** Any notice or demand under this agreement must be in writing and will be considered properly given and effective only when mailed or delivered in the manner provided by this section 19 to the persons identified below. A mailed notice or demand will be effective or will be considered to have been given on the second business day after it is deposited in the United States Mail, as certified mail, addressed as set forth below and with postage prepaid. A notice or demand sent in any other manner will be effective or will be considered properly given when actually delivered. A party may change its address for these purposes by giving written notice of the change to the other party in the manner provided in this section 19 Notwithstanding anything set forth in this section, after disbursement of funds to the Owner, all notices regarding the Special Tax must be sent as provided by California law.

| To City of Chula Vista: | To Owner: | Alejandro | Marcey |
|---|---|---|---|
| Department of Public Works, Conservation Section | | | |
| Attn  Environmental Resource Manager | | | |
| 276 Fourth Street | | | |
| Chula Vista, CA 91910 | | | |
| | 1172 Nolan Ave | | |
| | Chula Vista | CA | 91911 |

20.  **No Waiver.** A disbursement of the Disbursement Amount based upon inadequate or incorrect information will not constitute a waiver of the Jurisdiction's right to receive a refund of the Disbursement Amount from the Owner

21.  **Interpretation.** This agreement is to be interpreted and applied in accordance with California law  Exhibits A and B are part of this agreement.  "Include" and its variants are terms of enlargement rather than of limitation  For example, "includes" means "includes but not limited to," and "including" means "including but not limited to."

22.  **Venue.** Any legal action brought under this agreement must be instituted in the Superior Court of the County in California within which the CFD is domiciled



23. **Assignment by Jurisdiction.** The Jurisdiction, at its option, may do either or both of the following without obtaining the Owner's consent:

    (a)    Assign any or all of its rights and obligations under this agreement, including the right to file and prosecute any foreclosure action regarding delinquent Special Taxes or any other amounts payable by the Owner under this agreement.

    (b)    Pledge and assign its right to receive the Special Tax collections and any other amounts payable by the Owner under this agreement.

24. **Owner Assignment Prohibited.** The Owner shall not assign or transfer any portion of this agreement or of the Owner's rights or obligations under the agreement without the Jurisdiction's prior express written consent, which the Jurisdiction may withhold, grant, or condition in its sole and absolute discretion. The sale, transfer, or rental of the Property is not an assignment or transfer of this agreement.

25. **Carbon Credits.** Any carbon credits, renewable-energy credits, solar-renewable-energy credits, offsets, or other tradable environmental certificate or permit attributable to the Improvements will be owned by the Jurisdiction except as follows. If installation of the Improvements qualifies for a monetary incentive or rebate program that requires transfer of carbon credits to the provider of the monetary incentive or rebate, then the Jurisdiction shall provide for the transfer of the appropriate carbon credits in conjunction with the provision of the monetary incentive or rebate to the Owner

26. **Entire Agreement; Counterparts; Amendment.** This agreement contains the parties' entire understanding regarding the matters addressed and is intended to be their final, complete, and exclusive expression of those matters. It supersedes all prior or contemporaneous agreements, representations, and negotiations, whether written, oral, express, or implied. Any amendment to this agreement must be in writing and signed by both parties. If the Owner consists of more than one person or entity, then all such persons and entities will be jointly and severally obligated by this agreement. This agreement may be executed in several counterparts, each of which will be considered an original, but all of which together will constitute the same agreement.

27. **Special Termination.** Notwithstanding anything to the contrary above, this agreement will terminate and be of no further force if, on or before the date and time described in the Notice of Right to Cancel delivered to the Owner when the Owner signed this agreement, the Owner submits to the Program Administrator a notice of the Owner's decision to cancel this agreement.

**(SIGNATURE PAGES FOLLOW)**



## PROPERTY OWNER NO. 1

| First Name: Alejandro | Middle: | Last Name: Marcey |
|---|---|---|

**Trust:**

**Legal Entity:**

**Mailing Address:** 1172 Nolan Ave

| City: Chula Vista | State: CA | Zip Code: 91911 |
|---|---|---|

**IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.**

**IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE.  EXAMPLE: John M. Smith, Trustee**

**E-SIGNATURE**

DocuSigned by:

4AD4CDF32A8E4B3...

8/26/2015 | 5:25 PM PT
............................................................
**DATE**

**WET SIGNATURE**

.......................................................................
**SIGNATURE**

............................................................................
**DATE**

**Name of Signatory:** Alejandro Marcey

**Title of Signatory:** Information System Specialist

A notary public or other officer completing this certificate verifies only the identity of the individual who sig
the document to which this certificate is attached, and not the truthfulness, accurac , or validity of that document.

**STATE OF CALIFORNIA**

County of...... .. ......              .. . ..... .. . .. .. . . . . ............ .} ss.

On. .... . .............. .... . .. .. . .. .... ., 20 . ..... ........... . before me, ..... .. . . ... ...... ........ .... ................ . . . ...... ..... . .. personally appeared,

. .  ........... .... . .. . ... .. .... ..  ........ ........... who proved to me on the basis of satisfactory evidence to be the person(s), whose name(s) is/are sub-
scribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

.......................................................................
**NOTARY'S SIGNATURE**

**SEAL**



| UNANIMOUS APPROVAL AGREEMENT | 01 15.2015 | 8 |
| DOC ID  CA.CHULA  2 1 | | |

## PROPERTY OWNER NO. 2

| First Name:  FELICIA | Middle: | Last Name:  MARCEY |
|---|---|---|

**Trust:**

**Legal Entity:**

**Mailing Address:**  1172 NOLAN AVE

| City:  CHULA VISTA | State:  CA | Zip Code:  91911 |
|---|---|---|

**IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.**

**IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE.  EXAMPLE: John M. Smith, Trustee**

**E-SIGNATURE**

DocuSigned by:

—4AD4CDF32A8E4B3

8/26/2015 | 5:18 PM PT
DATE

**WET SIGNATURE**

SIGNATURE

DATE

**Name of Signatory:**  FELICIA  MARCEY

**Title of Signatory:**

A notary public or other officer completing this certificate verifies only the identy of the individual who sig
the document to which this certificate is attached, and not the truthfulness, accurac , or validity of that document.

**STATE OF CALIFORNIA**

County of..  . .. .. .. . . . .. .. ..  .  .. .. .......... . . } ss.

On.  . . . .. . .. .. . . .. .. ... .. , 20 . . . . . .. before me,  . . . .  . .. ......... . . . . ........ . . .. ... .. ...... . . .  personally appeared,

. .. ... .. . .. ..... .. . .. .. . . ... ... ... .. . who proved to me on the basis of satisfactory evidence to be the person(s), whose name(s) is/are sub-
scribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

....  .... ....  . .........  ... .................. ......... ... . ..................... .
**NOTARY'S SIGNATURE**

**SEAL**



## PROPERTY OWNER NO. 3

| First Name: | Middle: | Last Name: |
|---|---|---|

**Trust:**

**Legal Entity:**

**Mailing Address:**

| City: | State: | Zip Code: |
|---|---|---|

IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE.  EXAMPLE: John M. Smith, Trustee

**E-SIGNATURE**                                                    **WET SIGNATURE**

............................................................ ... .. . .... ..................... ... .. .. ......................
**SIGNATURE**

.................................. .... . .................. ................... ..... ... .      .. ........  ................... ........... ..... .. ... ........ ..................... ..... .. . ....
**DATE**                                                            **DATE**

**Name of Signatory:**

**Title of Signatory:**

A notary public or other officer completing this certificate verifies only the identity of the individual who sig
the document to which this certificate is attached, and not the truthfulness, accurac , or validity of that document.

**STATE OF CALIFORNIA**

County of.. ... . . .   . ..  .......... ..  .. . . . ... ...........} ss.

On..... .. . .   ...    . . .  . .. .........., 20.. ...... ..  .. .. before me, ..........  ........ . .     . .. .................... ................... ... .  personally appeared,

.... ... ... .. ...... .  . . .. ... . ..................  .. . .  who proved to me on the basis of satisfactory evidence to be the person(s), whose name(s) is/are sub-
scribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

....... .... ...................... ... ............. ....... .............................. .............
**NOTARY'S SIGNATURE**                                             **SEAL**



## PROPERTY OWNER NO. 4

| First Name: | Middle: | Last Name: |
|---|---|---|

**Trust:**

**Legal Entity:**

**Mailing Address:**

| City: | State: | Zip Code: |
|---|---|---|

IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE.  EXAMPLE: John M. Smith, Trustee

**E-SIGNATURE**                                    **WET SIGNATURE**

..............................................................................
**SIGNATURE**

.......................................................          ..............................................................................
**DATE**                                           **DATE**

**Name of Signatory:**

**Title of Signatory:**

A notary public or other officer completing this certificate verifies only the identy of the individual who sig
the document to which this certificate is attached, and not the truthfulness, accurac , or validity of that document.

STATE OF CALIFORNIA

County of........ ... .... .... . .. ... .. .. .. . ... ... .. .. .. .. .. ... ... } ss.

On. .. ... ........ .. .. .. .. ..... .., 20.... ........ .... .. before me. ....... ... .. .. .. .. ........ ...........................  .. .. ... ... .. ... . personally appeared,

. .. ... ................  .. .. .  .. . .. ...... .... .. .. .. ... .... who proved to me on the basis of satisfactory evidence to be the person(s), whose name(s) is/are sub-
scribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies). and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

....................... ..... ... ..........................  ......................... ............. ........
**NOTARY'S SIGNATURE**                                    **SEAL**



www.CleanEnergyChulaVista.com

## CITY OF CHULA VISTA

Signature of Authorized Person:

Print Name and Title of Authorized Person: RICHARD HOPKINS, DIRECTOR OF PUBLIC WORKS

Date: 9-2-15



## UNANIMOUS APPROVAL AGREEMENT EXHIBIT A

### NOTICE OF SPECIAL TAX LIEN

**Community Facilities District No. 2013-01**
**(Clean Energy),**
**City of Chula Vista,**
**County of San Diego, State of California**

Pursuant to sections 53328.1(a)(4) and 53328 3 of the California Government Code, which are part of the "Mello-Roos Community Facilities Act of 1982" (chapter 2 5, part 1, division 2, title 5 of the California Government Code) (the "**Act**"), and to section 3114.5 of the California Streets and Highways Code, the undersigned hereby gives notice that a lien to secure payment of a special tax is hereby imposed by the City Council of the City of Chula Vista, County of San Diego, (the "**Jurisdiction**"), State of California, upon the parcel listed here (the "**Property**") The special tax secured by this lien is authorized to be levied for the purpose of paying the cost to acquire and install qualifying renewable-energy systems and energy- and water-efficiency improvements, including paying principal and interest on debt (as that term is defined in the Act), the proceeds of which are used to finance all or a portion of the cost of the systems and improvements

The special tax is authorized to be levied within Community Facilities District No. 2013-01 (Clean Energy), City of Chula Vista, County of San Diego, State of California, to which the Property has been annexed with the unanimous consent of all of its owners by means of a Unanimous Approval Agreement (to which reference is made for further particulars and which, under section 53329 6 of the Act, constitutes the vote of the qualified electors required by the California Constitution) The lien of the special tax is a continuing lien that secures each annual levy of the special tax and continues in effect until the special-tax obligation is prepaid, permanently satisfied, or canceled in accordance with law.

The *maximum* annual amount of the special tax is shown hereon. The conditions under which the obligation to pay the special tax may be prepaid and permanently satisfied and the lien of the special tax canceled, and the procedures for calculating the amount required for prepayment of the special tax, are set forth in the Unanimous Approval Agreement.

Notice is further given that upon the recording of this notice in the office of the Clerk/Recorder of the County within which the District is domiciled, the obligation to pay the special-tax levy will become a lien upon the Property in accordance with section 3115 5 of the California Streets and Highways Code.

The names of the owners and the assessor's parcel number of the Property are shown hereon.

For further information concerning the current and estimated future special-tax liability of owners or purchasers of the Property subject to this special-tax lien, interested persons should contact:

**Willdan Financial Services**
**(866) 807-6864**
**DAS-AnalystAssistants@willdan.com**



# UNANIMOUS APPROVAL AGREEMENT EXHIBIT B

## DESCRIPTION OF ESTIMATED COSTS AND TERMS OF FINANCING

**INTEREST RATE:** 8.25 %          **REPAYMENT TERMS:** 20 years

**PREPAYMENT PREMIUM:** 5.0 %          **INTEREST RATE LOCK PERIOD*:** 90 days from the effective date of this UAA

*NOTE: If you do not complete your project and request funding during the Rate Lock Period your Interest Rate may increase.

|  | MAXIMUM AUTHORIZED | PROPOSED PROJECT |
|---|---|---|
| **Eligible Project Funding:** | $44,203.87 | $36,050.00 |
| **Estimated Program Fees:** | $754.00 | $754.00 |
| **Estimated Capitalized Interest:** | $3,438.13 | $2,814.57 |
| **Estimated Financing:** | $48,396.00 | $39,618.57 |
| **Estimated Annual Special Tax**:** | $5,523.43 | $4,110.60 |

** NOTE: The Maximum Annual Special Tax includes an allowance of 10% from which annual administrative costs including, but not limited to, tax collection and trustee fees will be paid.

| PROPERTY OWNER NO. 1 | PROPERTY OWNER NO. 2 |
|---|---|
| SIGNATURE: *(signed)* —DocuSigned by—4AD4CDF32A8E4B3... | SIGNATURE: *(signed)* —DocuSigned by—4AD4CDF32A8E4B3... |
| NAME: Alejandro Marcey | NAME: FELICIA MARCEY |
| TITLE: Information System Specialist | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |

| PROPERTY OWNER NO. 3 | PROPERTY OWNER NO. 4 |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: | NAME: |
| TITLE: | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |



# NOTICE TO RIGHT TO CANCEL

## YOUR RIGHT TO CANCEL
You are entering into a Unanimous Approval Agreement for financing under the Jurisdiction Program that will result in a special tax lien being placed on your property at the following address:

**Property Street Address:**   1172 NOLAN AVE

| **City:**  CHULA VISTA | **State:**  CA | **Zip:** 91911 |
|---|---|---|

Ygrene is offering you the right to cancel this transaction without cost, within three (3) business days from the date you execute the Unanimous Approval Agreement. If you cancel this transaction during this three day period, the Jurisdiction will not record the special tax lien on the property.

## ACKNOWLEDGEMENT OF RECEIPT
I/We hereby acknowledge reading and receiving a copy of this Notice of Right to Cancel.

| PROPERTY OWNER NO. 1 | PROPERTY OWNER NO. 2 |
|---|---|
| **SIGNATURE:** *DocuSigned by:* *4AD4CDF32A8E4B3* | **SIGNATURE:** *DocuSigned by:* *4AD4CDF32A8E4B3* |
| **NAME:**  Alejandro Marcey | **NAME:**  FELICIA  MARCEY |
| **TITLE:**   Information System Specialist | **TITLE:** |
| **TRUST:** | **TRUST:** |
| **LEGAL ENTITY:** | **LEGAL ENTITY:** |

| PROPERTY OWNER NO. 3 | PROPERTY OWNER NO. 4 |
|---|---|
| **SIGNATURE:** | **SIGNATURE:** |
| **NAME:** | **NAME:** |
| **TITLE:** | **TITLE:** |
| **TRUST:** | **TRUST:** |
| **LEGAL ENTITY:** | **LEGAL ENTITY:** |

## HOW TO CANCEL
If you decide to cancel this transaction, you must notify the Program Administrator in writing at 100 B Street, Santa Rosa, CA 95401 or by emailing your cancellation to laura.choi@ygrene.us. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.

## I WISH TO CANCEL

| ........................................................ | ...................................................... | .............................................. |
|---|---|---|
| **NAME** | **SIGNATURE** | **DATE** |

I would like to cancel my Unanimous Approval Agreement for the reason(s) described below:



| | UNANIMOUS APPROVAL AGREEMENT | | 01.15.2015 | | 15 |
|---|---|---|---|---|---|
| | DOC ID  CA CHULA 2.1 | | | | |

# EXHIBIT B

**GREEN CORRIDOR**

www.YgreneWorks.com

# AGREEMENT TO PAY ASSESSMENTS AND FINANCE QUALIFYING IMPROVEMENTS

This Agreement to Pay Assessments and Finance Qualifying Improvements (the "**Agreement**"), dated _____09/26/2016_____ , is between the Green Corridor Property Assessment Clean Energy (PACE) District, a public body corporate and politic duly organized and existing under the laws of the State of Florida (the "**District**") and all of the persons or entities identified below as the record owner(s) (the "**Property Owner**") of the fee title to the real property identified herein (the "**Property**").

| | | | |
|---|---|---|---|
| **Owner No. 1:** | GRACHIAN | LONZELL | SMITH |
| **Owner No. 2:** | | | |
| **Owner No. 3:** | | | |
| **Owner No. 4:** | | | |
| **Trust:** | | | |
| **Legal Entity:** | | | |

| **Project ID No.:** FL-279-ZD96V6 | **Folio Number:** 51-41-12-08-0080 |
|---|---|

**Property Street Address:** 6308 ARTHUR ST

| **City:** HOLLYWOOD | **State:** FL | **Zip:** 33024 |
|---|---|---|

## RECITAL

**WHEREAS**, the District has established a PACE program (the "**Program**") to allow the financing of certain qualifying energy conservation, energy efficiency, renewable energy, and wind resistance improvements that are permanently affixed to real property in the District (the "**Qualifying Improvements**") through the levy of voluntary assessments pursuant to Florida Statutes §163.08(4) (the "**Assessment(s)**"); and

**WHEREAS**, the District has conducted the proceedings required by Florida law to operate within the boundaries of the District; and

**WHEREAS**, the Property is located within the District, and the District is authorized to enter into voluntary contractual assessments with Property Owners to finance the installation of Qualifying Improvements; and

**WHEREAS**, the District and the Property Owner wish to enter into this Agreement pursuant to which the District will agree to finance the costs of installing the Qualifying Improvements, which are initially as described in Exhibit B, and which will be modified and finalized in an Addendum or Addenda to this Agreement (collectively, the "**Addendum**") to be recorded in the public records of the county in which the property is located (the "**County**") upon completion of the installation of the Qualifying Improvements (the "**Final Improvements**") on the Property, and the Property Owner agrees to the imposition by the District of the Assessment in order to repay the costs incurred by the District with respect to financing the installation of the Final Improvements, all on the terms set forth in this Agreement; and

**WHEREAS**, the District has engaged Ygrene Energy Fund Florida, LLC (together with any successors or assigns, (the "**Administrator**") to act as the Administrator of the Program pursuant to a Third Party Administration Agreement dated as of August 16, 2011 (the "Administration Agreement") between the Town of Cutler Bay, Florida and the Administrator and subsequently assigned to the District.

**NOW, THEREFORE**, in consideration of the foregoing and the material covenants hereinafter contained, the Property Owner and the District formally covenant, agree and bind themselves and their successors and assigns as follows:



| **FINANCING AGREEMENT** | 9/7/2016 | **3** |
|---|---|---|
| DOC ID: FL.GC.2.12 | -279-ZD96V6 | |

# AGREEMENT

## Section 1. Purpose

The Property Owner and the District are voluntarily entering into this Agreement for the purpose of financing the installation of the Final Improvements on the Property. The District will not finance the installation of any improvements other than those listed on **Exhibit B**. If change orders or additional improvements are added to the project before disbursement is made, this will be reflected in Exhibit B of the **Addendum**.

## Section 2. The Property.

The Property Owner hereby represents and warrants that:

a)  It is indefeasibly seized with fee simple title to the Property and possesses all legal authority necessary to execute this Agreement;

b)  All property taxes and any other assessments levied on the same bill as property taxes are paid and have not been delinquent for the preceding three years or the Property Owner's period of ownership, whichever is less;

c)  There are no involuntary liens, including, but not limited to, construction liens on the Property; and no notices of default or other evidence of property - based debt delinquency have been recorded during the preceding three years or the Property Owner's period of ownership, whichever is less; and

d)  Property Owner is current on all mortgage debt on the Property.

## Section 3. Notice to the Holders or Loan Servicers of Record of Any Existing Mortgages Encumbering or Otherwise Secured by the Property.

The parties agree, that at least 30 days before execution of this Agreement, the Property Owner or Administrator on their behalf has provided notice to the holders or loan servicers of record of any existing mortgages encumbering or otherwise secured by the Property of the Property Owner's intent to enter into this Agreement together with the maximum principal amount to be financed and the maximum annual assessment necessary to repay that amount as set forth in Exhibit C. The Property owner or Administrator shall provide a verified copy or other proof of such notice to the District.

## Section 4. Agreement to Pay Assessment; Prepayment; Non-Completion.

a)  Payment of Final Assessment. Upon completion of the Final Improvements and disbursement of funds, the District shall record the Addendum, which will set forth the amount of the Yearly Annual Assessment and the term of the Assessment. The Property Owner acknowledges and agrees that the Addendum will be recorded by the District without further authorization from, or execution by, the Property Owner. The Property Owner acknowledges and agrees that the final interest rate will be the same as the estimated interest rate if the final Improvements are completed with the period set forth in Exhibit C hereto; otherwise, the final interest rate will be based on market conditions existing at the time that the funds are released and may be more than the estimated interest rate, resulting in a corresponding increase in the maximum annual assessment. In addition, the Property Owner acknowledges and agrees that all of the amounts set forth in Exhibit C hereto will change if the Property Owner requests a change in the term over which assessments are to be repaid. The District shall not provide funding in an amount in excess of the Final Cost. Interest will accrue on the Final Assessment at the Final Interest Rate.

b)  Payment of Non-Completion Assessment. The Property Owner understands and hereby acknowledges that in the event that the Property Owner begins the installation of the Qualifying Improvements identified in Exhibit B and subsequently decides not to complete such Qualifying Improvements in compliance with the Program rules and this Agreement (a "Project Abandonment"), the District may be obligated to pay the District's expenses incurred prior to Project Abandonment. Upon Project Abandonment, the Property Owner agrees that the District will record the Addendum which will set forth the amount of the Yearly Annual Assessment and the Term of the Assessment. Failure to sign all the required program documents within 30 days of the successful inspection of the Final Improvements will also constitute Project Abandonment. The Addendum will not require any further consent of, or execution by, the Property Owner. The Property Owner acknowledges and agrees that the non-completion or project abandonment interest rate will be based on market conditions existing at the time the Addendum is finalized and may be more or less than the original estimated interest rate. The Property Owner acknowledges that the purpose of the Non-Completion Assessment is to provide for redemption of any bonds issued by the District or repayment of any other financial obligation entered into by or on behalf of the District to finance installation of the Qualifying Improvements on the Property, and to pay any costs incurred by the District. The Property Owner further agrees and acknowledges that the District will levy the Non-Completion Assessment in the first fiscal year in which the District is able to cause the Non-Completion Assessment to be placed on the property tax roll.

c)  Administrative Expenses. The Property Owner hereby agrees and acknowledges that the District may add amounts to an annual installment of the Assessment (including a Non-Completion Assessment) in order to pay for the costs of collecting the Assessment (the "Final Assessment" and the "Non- Completion Assessment" shall include such amounts as referred to herein) including the County's Tax Collector fee.

d)  Prepayment of the Final Assessment. The Owner may prepay the Final Assessment obligation at any time by paying the then outstanding principal balance as shown on the amortization schedule provided with the final closing statement, plus reasonable administrative costs and the current year's installment of the Assessment that appears on the property tax bill. The prepayment may also include a prepayment premium based upon a percentage of the remaining principal as defined in Exhibit C hereto. The Final Assessment obligation may only be prepaid in full.

e)  Absolute Obligation. The Property Owner hereby agrees and acknowledges that the Assessment will not be subject to reduction, offset or credit of any kind in the event that the bonds secured thereby are refunded or for any other reason.



**Section 5. Collection of Assessment; Lien**

The Assessment, and the interest and charges thereon resulting from a delinquency in the payment of any installment of the Assessment, shall constitute a lien against the Property equal in dignity with county taxes and assessments, and when due shall be superior to all other liens, title and claims, including any mortgage, until paid. The Assessment shall be paid and collected on the same bill as real property taxes using the uniform method of collection authorized by Chapter 197, Florida Statutes; however, the assessment is not subject to any discount from the County Tax Collector for early payment. The Property Owner agrees and acknowledges that if any Assessment installment is not paid when due, collection of such Assessment will be accomplished using the method of collection authorized under Chapter 197, Florida Statutes, or as otherwise authorized now or hereafter under Florida law. Failure to pay the assessment may cause a tax certificate to be issued against the property, which will result in potential loss of the property if not paid.

**Section 6. Financing of the Final Improvements**

a)   Agreement to Finance Final Improvements. The District hereby agrees to use the Assessment to finance the Final Improvements, including the payment of the District's and Administrator's reasonable costs of administering the Program, subject to the Property Owner's compliance with the conditions for such financing established by the District.

b)   Disbursement of Funds. The District will make one disbursement as directed by the Property Owner when the following conditions have been met, except in the case of an approved phase or course of construction payment schedule authorized by the District. The District's obligation to disburse funds to pay the costs of the Final Improvements shall be conditioned upon the Property Owner providing, to the satisfaction of the District, (i) all required affidavits from all contractors and the Property Owner certifying that the Final Improvements have been completed in accordance with all applicable building codes, regulations, and other governmental requirements, and (ii) final releases or waivers of all applicable contractors', mechanic's and materialmen's liens. Disbursed funds must be used to pay for the installation of improvements or used purely as a reimbursement of expenses incurred for the installation of improvements. Acceptance of financing while refusing to pay for installation of improvements may constitute fraud against the Program.

**Section 7. Term; Agreement Runs with the Land; Subdivision**

a)   Except as otherwise set forth in this Agreement, this Agreement shall expire upon the final payment or prepayment of the Assessment.

b)   This Agreement establishes rights and obligations that are for the benefit of the Property and such rights and obligations run with the land.

c)   In the event the Property is subdivided while the Assessment remains unpaid, the Assessment will remain on all subdivided parcels that were used to calculate property value at the time of funding. If the Final Improvements no longer exist, the Assessment will be assigned to each of the newly created parcels on a per-acre basis, unless the District, in its sole discretion, determines that the Assessment should be allocated in an alternate manner.

**Section 8. Recordation of Documents**

The Property Owner hereby authorizes and directs the District to cause to be recorded in the public records of the County the various notices and other documents, including an Addendum, required by applicable laws to be recorded against the Property.

**Section 9. Special Disclosure Regarding Certain Mortgage Lenders**

Many lenders that make residential loans desire to preserve the option to sell those loans to U.S. government-sponsored enterprises (called "GSEs") that are regulated by the Federal Housing Finance Agency ("FHFA"). The FHFA appears to have instructed its GSEs not to purchase residential loans where there is a superior lien for qualifying improvements, such as the assessment lien. Thus, in order to refinance your residential loan, or for a prospective purchaser of your property to obtain a loan secured by the property, you may need to remove the assessment lien by prepaying the assessment obligation in full. You thus should consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the assessment obligation, in deciding whether to participate in the program by executing this agreement. A prepayment premium may be applied on assessments that are paid early.

**Section 10. Notice**

The Property Owner agrees that at or before the time a prospective purchaser executes a contract for the sale and purchase of the Property, the Property Owner shall give the prospective purchaser a written disclosure statement in the following form, which shall be set forth in the contract or in a separate writing:

QUALIFYING IMPROVEMENTS FOR ENERGY EFFICIENCY, RENEWABLE ENERGY, OR WIND RESISTANCE
The property being purchased is located within the jurisdiction of a local government that has placed an assessment on the property pursuant to s.163.08, Florida Statutes. The assessment is for a qualifying improvement to the property relating to energy efficiency, renewable energy, or wind resistance, and is not based on the value of property. You are encouraged to contact the county property appraiser's office to learn more about this and other assessments that may be provided by law.

**Section 11. Waivers, Acknowledgement and Agreement**

This Agreement reflects the Property Owner's free and willing consent to the imposition of the Assessment. The Property Owner hereby waives its right to repeal the Assessment by initiative or any other action, or to file any lawsuit or other proceeding to challenge the Assessment or any aspect of the proceedings of the District undertaken in connection with the Program. The Property Owner hereby agrees that the Property Owner and its successors in interest to fee title in the Property shall be solely responsible for the installation, operation and maintenance of the Final Improvements. The Property Owner hereby acknowledges that the Property Owner will be responsible for payment of the Assessment regardless of whether the Final Improvements are properly installed, operated, or maintained as expected.



The Property Owner hereby agrees that the District is entering into this agreement solely for the purpose of assisting the Property Owner with the financing of the installation of the qualifying improvements, and that the District has no responsibility of any kind for, and shall have no liability arising out of, the installation, operation, financing, inability to finance, refinancing, or maintenance of the qualifying improvements.

Based upon the foregoing, the Property Owner hereby waives the right to recover from and fully and irrevocably releases the District and the Administrator and any and all agents, employees, attorneys, representatives and successors and assigns of the District and the Administrator any and all losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees), relating to the subject matter of this agreement that the Property Owner may now have or hereafter acquire against the District or the Administrator and any and all agents, employees, attorneys, representatives, successors, and assigns of the District or the Administrator.

To the extent that the foregoing waivers and agreements are subject to Florida or similar provisions of other applicable law, it is the intention of the Property Owner that the foregoing waivers and agreements will be effective as a bar to any and all losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees), of whatever character, nature, and kind, known or unknown, suspected or unsuspected, and Property Owner agrees to waive any and all rights and benefits conferred upon the Property Owner by the provisions of Florida law.

The waivers, releases, and agreements set forth in this Section 11 shall survive termination of this Agreement.

**Section 12. Indemnification**

The Property Owner agrees to indemnify, defend, protect, and hold harmless the District and the Administrator and any and all agents, employees, attorneys, representatives, successors, and assigns of the District and the Administrator, from and against all losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees), and any demands of any nature whatsoever related directly or indirectly to, or arising out of or in connection with (I) the assessment, (II) the financing by or on behalf of the District of the final Improvements, (III) the final Improvements, or (IV) any other fact, circumstance, or event related to the subject matter of this agreement, regardless of whether such losses, liabilities, claims, damages (including consequential damages), penalties, fines, forfeitures, costs, and expenses (including all reasonable out-of-pocket litigation costs and reasonable attorney's fees) accrue before or after the date of this agreement.

The provisions of this Section 12 shall survive the termination of this Agreement.

**Section 13. No Representation by District or Administrator as to Suitability or Effectiveness of Final Improvements**

The Property Owner hereby acknowledges that it has done its own investigation and analysis of the suitability of the final Improvements for the property and the potential cost savings and environmental impact of the final Improvements. Neither the District nor the Administrator represents or guarantees (A) that the final Improvements are suitable for their intended purposes, (B) that the final Improvements will result in energy savings or other cost savings to the Property Owner, or (C) the economic value or the environmental impact of the final Improvements. In particular, neither the District nor the Administrator represents or guarantees that utility companies will not raise their rates in the future and thereby offset all or apportion of the Property Owner's projected savings as a result of making the final Improvements nor that the installation of the final Improvements will result in any increase in the value of the property. The Property Owner hereby acknowledges and agrees that the District and the Administrator are merely assisting the Property Owner by providing a financing mechanism for the final Improvements and have no role in determining the economic, financial, or environmental value or impact of the final Improvements. The Property Owner hereby agrees that the waivers in Section 11 and the indemnification provisions in Section 12 apply specifically to, among other things, the matters referred to in this Section 13.

**Section 14. Right to Inspect Property**

The Property Owner hereby grants the District, its agents and representatives the right to enter at any reasonable time, upon reasonable notice, to inspect the Final Improvements. The Property Owner further hereby grants the District, its agents and representatives the right to examine and copy any documentation relating to the Final Improvements.

**Section 15. Carbon Credits**

The Property Owner hereby agrees that any carbon credits attributable to the Final Improvements shall be owned by the District.

**Section 16. Program Application**

The Property Owner hereby represents and warrants to the District that the information set forth in the program application (the "Program Application") submitted to the District in connection with its request for financing is true and correct as of the date hereof, and that the representations set forth in the Program Application with respect to the Property and the Property Owner are true and correct as of the date hereof as if made on the date hereof.



**Section 17. Amendment**

This Agreement may be modified only by the written agreement of the District and the Property Owner.

**Section 18. Binding Effect; Assignment**

This Agreement inures to the benefit of and is binding upon the District, the Property Owner and their respective successors and assigns.

The District has the right to assign or delegate to any person or entity (whether by way of sale, pledge, grant of security interest, or otherwise) this Agreement and any or all of its rights (including rights to payment, the Assessment, the Assessment lien, the right to pursue any available legal remedy, and the right to enforce the collection of the Assessment or any installment thereof against the Property as authorized under Florida law) and obligations under this Agreement, without the consent of the Property Owner. Any such delegation of obligations by the District shall release the District from such obligations to the extent stated in such delegation, without the need for any consent of the Property Owner. The obligation to pay the Assessment set forth in this Agreement and in the Addendum is an obligation of the Property and no agreement or action of the Property Owner will serve to impair in any way the District's rights, including, but not limited to, the right to pursue any available legal remedy or the right to enforce the collection of the Assessment or any installment thereof against the Property as authorized under Florida law.

**Section 19. Exhibits**

The Exhibits to this Agreement are incorporated into this Agreement by this reference as if set forth in their entirety in this Agreement.

**Section 20. Severability**

If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, such holding will not invalidate or render unenforceable any other provision of this Agreement.

**Section 21. Corrective Instruments**

The District and the Property Owner agree that they will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements hereto and such further instruments, including the Addendum, as may reasonably be required in order to carry out the expressed intention of this Agreement.

**Section 22. Governing Law; Venue**

This Agreement is governed by and construed in accordance with the laws of the State of Florida. Any legal action brought under this Agreement must be instituted in Miami-Dade County, Florida.

**Section 23. Counterparts**

This Agreement may be executed in several counterparts, each of which is an original and all of which constitutes one and the same instrument. IN WITNESS WHEREOF, the District and the Property Owner have caused this Agreement to be executed in their respective names by their duly authorized representatives, all as of the date first above written.

**(SIGNATURE PAGES FOLLOW)**



## PROPERTY OWNER NO. 1

**First Name:**  GRACHIAN          **Middle:**  LONZELL          **Last Name:**  SMITH

**Trust:**

**Legal Entity:**

**Mailing Address:**   6308 ARTHUR ST

**City:**  HOLLYWOOD          **State:**  FL          **Zip Code:**  33024

IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE. EXAMPLE: John M. Smith, Trustee

**E-SIGNATURE**                                                        **WET SIGNATURE**

........................................................................        ........................................................................
                                                                       **SIGNATURE**

                                                                       9/28/16

........................................................................        ........................................................................
**DATE**                                                               **DATE**

**Name of Signatory:**   GRACHIAN LONZELL SMITH

**Title of Signatory:**



## PROPERTY OWNER NO. 2

**First Name:**                                    **Middle:**                                    **Last Name:**

**Trust:**

**Legal Entity:**

**Mailing Address:**

**City:**                                    **State:**                                    **Zip Code:**

IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW. INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE. EXAMPLE: John M. Smith, Trustee

**E-SIGNATURE**                                    **WET SIGNATURE**

**SIGNATURE**

**DATE**                                    **DATE**

**Name of Signatory:**

**Title of Signatory:**



## PROPERTY OWNER NO. 3

**First Name:**                    **Middle:**                              **Last Name:**

**Trust:**

**Legal Entity:**

**Mailing Address:**

**City:**                              **State:**                              **Zip Code:**

IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE. EXAMPLE: John M. Smith, Trustee

**E-SIGNATURE**                                        **WET SIGNATURE**

........................................................
**SIGNATURE**

........................................................          ........................................................
**DATE**                                                        **DATE**

**Name of Signatory:**

**Title of Signatory:**



## PROPERTY OWNER NO. 4

**First Name:**                    **Middle:**                    **Last Name:**

**Trust:**

**Legal Entity:**

**Mailing Address:**

**City:**                    **State:**                    **Zip Code:**


IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.

IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE. EXAMPLE: John M. Smith, Trustee


**E-SIGNATURE**                                        **WET SIGNATURE**

.................................................................
                                                       **SIGNATURE**

.................................................       .................................................
**DATE**                                                **DATE**

**Name of Signatory:**

**Title of Signatory:**



www.YgreneWorks.com

# GREEN CORRIDOR PROPERTY ASSESSMENT CLEAN ENERGY (PACE) DISTRICT

**IMPORTANT SIGNATURE INSTRUCTIONS: PLEASE SIGN YOUR NAME EXACTLY AS DISPLAYED IN THE SIGNATORY FIELDS BELOW, INCLUDING THE TITLE IF APPLICABLE.**

**IF YOU ARE A TRUSTEE, PLEASE INCLUDE THE TITLE "TRUSTEE" AFTER YOUR SIGNATURE. EXAMPLE: John M. Smith, Trustee**

E-SIGNATURE

WET SIGNATURE

SIGNATURE

10·31·16

DATE

DATE

**Name of Signatory:**    PAUL WINKELJOHN

**Title of Signatory:**    EXECUTIVE DIRECTOR



# EXHIBIT A

**PROPERTY (LEGAL DESCRIPTION)**

HOLLYWOOD SUBURBS NO 2 35-11 B LOT 8 BLK 1

# EXHIBIT B

## INITIAL DESCRIPTION OF QUALIFYING IMPROVEMENTS

| _____ BOILER | _____ CONTROL SYSTEMS | ENERGY EFFICIENT WINDOWS & DOORS _____ | HVAC | ✔ IMPACT WINDOWS & DOORS | _____ INSULATION |
|---|---|---|---|---|---|
| _____ LIGHTING | REFLECTIVE COATING _____ | ROOFING | _____ SOLAR | WATER CONSERVATION | HURRICANE PROTECTION |

_____ ENERGY STORAGE    _____ OTHER   PLEASE DESCRIBE:



## EXHIBIT C

### DESCRIPTION OF ESTIMATED COSTS AND TERMS OF FINANCING

| INTEREST RATE: | 7.11 | % | REPAYMENT TERMS: | 20 | years |
|---|---|---|---|---|---|

**PREPAYMENT PREMIUM:** 0.0 % **INTEREST RATE LOCK PERIOD\*:** 90 days from the effective date of this agreement

\* NOTE: If you do not complete your project and request funding during the rate lock period your interest rate may increase.

|  | MAXIMUM AUTHORIZED BASED ON 09/26/2016 | PROPOSED** IF FUNDED BY 09/26/2016 | PROPOSED** IF FUNDED AFTER 07/01/2017 |
|---|---|---|---|
| **Contract Amount:** |  | $14,756.00 | $14,756.00 |
| **Program Fees:** |  | $505.00 | $505.00 |
| **Elective Fees:** |  | $221.34 | $221.34 |
| **Capitalized Interest:** |  | $1,554.52 | $1,882.86 |
| **Total Financing Amount:** | $23,495.00 | $17,036.86 | $17,365.20 |
| **Annual Assessment**:** | $2,236.76 | $1,621.93 | $1,653.19 |
| YOUR FIRST PAYMENT WILL BE DUE ON: |  | 03/01/2018 | 03/01/2019 |

**\*\*NOTE:** Collection fees may be added to the final assessment amount. These fees vary and are based on changes in the Tax Collector's fees schedules and policies. Ask the program administrator for the current collection fees being charged.

These estimates are based on assumptions about when the project will be completed and funded. The <u>Maximum Authorized</u> column estimates adequate capitalized interests to cover the period between the approval date and the end of the relevant tax year. Projects funded early in a tax year require substantially more capitalized interest than projects funded later in the tax year.

Owner 1    Owner 2    Owner 3    Owner 4

Please initial here to accept these terms.

| PROPERTY OWNER NO. 1 | PROPERTY OWNER NO. 2 |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME:  GRACHIAN LONZELL SMITH | NAME: |
| TITLE: | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |

| PROPERTY OWNER NO. 3 | PROPERTY OWNER NO. 4 |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: | NAME: |
| TITLE: | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |



| FINANCING AGREEMENT | 9/7/2016 | 14 |
|---|---|---|
| DOC ID: FL.GC.2.12 | -279-ZD96V6 | |

# PROPERTY OWNER(S)

# NOTARY ACKNOWLEDGEMENT

STATE OF FLORIDA      )
                                          )SS
COUNTY OF          )

The foregoing instrument was acknowledged before me this _2 8_ day of _Sept_ , 20 _16_ , by _GRACHIAN Lonzell Smith_ , who is/are personally known to me or who

has/have produced _DRIVER LICENSE_ as identification.

[ SEAL ]

NOTARY PUBLIC
STATE OF FLORIDA

MANUEL HERNANDEZ
MY COMMISSION # GG 004918
EXPIRES: June 22, 2020
Bonded Thru Budget Notary Services

Notary Public, State of Florida

_MANUEL HERNANDEZ_      _June/22/2020_
PRINT NAME OF NOTARY      COMMISSION EXPIRES

_GG 004918_
COMMISSION NUMBER

# DISTRICT

## NOTARY ACKNOWLEDGEMENT

**STATE OF FLORIDA** )
)SS
**COUNTY OF** Broward )

The foregoing instrument was acknowledged before me this 31 ST day of OCTOBER , 20 16 , by

Paul Winkeljohn , who is/are personally known to me or who

has/have produced as identification.

[ SEAL ]

Notary Public, State of Florida

LISA DERRYBERRY
Notary Public - State of Florida
Commission # FF 966842
My Comm. Expires Mar 2, 2020

PRINT NAME OF NOTARY                    COMMISSION EXPIRES

COMMISSION NUMBER



# EXHIBIT C

# NOTICE OF RIGHTS AND RESPONSIBILITIES FOR PROPERTY OWNERS IN THE CLEAN ENERGY GREEN CORRIDOR PACE DISTRICT

## SUMMARY

Many municipalities in the state of Florida have enacted ordinances that authorize a partnership among them for the purpose of forming a Property Assessed Clean Energy (PACE) district. The Green Corridor District (the "District") is a separate legal entity that will finance renewable energy, energy efficiency, and wind resistance improvements ("Qualifying Improvements") for residential and commercial properties. The District has contracted with an outside company, Ygrene Energy Fund Florida, LLC, to administer the PACE program (the "Program") for the District. The Program complies with a State law (Section 163.08 Florida Statute) that enables formation of the District and the Program to finance Qualifying Improvements on private property. Financing is repaid through a voluntary special assessment which appears on the property tax bill over a period of up to 20 years. The District does not guarantee that the Program is your best financing option. We encourage you to investigate and assess ALL available options before proceeding with the Program, which has advantages and disadvantages when compared to other financing options.

## RIGHTS AND RESPONSIBILITIES

1.  The PACE program allows a Property Owner to finance the Qualifying Improvements through the District and then repay a voluntary special assessment that appears as a separate delineated line item on the property tax bill. The special assessment remains with the property until it is fully paid, even if the property is sold. The nature of the Qualifying Improvements and the amount of the special assessment must be disclosed to future potential buyers of the property. The assessment may be prepaid in full at any time. Extra charges may apply.

2.  The interest rate charged on the money advanced through the Program is fixed for the life of the special assessment. This rate will be determined at the time the Property Owner executes a financing agreement and will be amortized for a period of up to 20 years. There may be other types of financing available to Property Owners and the District does not guarantee that the Program is the best financing option. Property owners should obtain advice from qualified professionals when selecting the option that is most appropriate for their particular situation.

3.  The District is not responsible for the quality of work performed by any contractor. Each Property Owner should do their own due diligence as to which contractor they choose, and then should work with that contractor to determine how to proceed with their project.

4.  The District does not guarantee that energy or cost savings will result from projects financed through the Program, how much the savings might be over the period of the assessment or whether there will be savings to cover the cost of the increased tax bill. Each Property Owner should look at all available data and make their own decision.

5.  Certain home improvement projects may affect insurance rates and availability. It is important to consult with an insurance agent before starting any type of construction project in order to ensure that (i) the property is fully covered and (ii) that all available discounts and credits are applied for wind hardening and other Qualifying Improvements.

6.  In accordance with Florida law, the lien securing the obligation to pay the special assessments will be senior to all private liens, including existing mortgage(s). Many mortgage and loan documents limit the ability of a Property Owner to place senior liens on property without the consent of the lender, or authorize the lender to obligate borrowers to prepay the senior obligation. Property owners are required to notify their lenders prior to submitting a Program funding request and to provide the District with a copy of the notification letter and proof of mailing. Unless otherwise instructed, the District will automatically send the notification letter to your lender once your application has been approved.

7.  The Federal Housing Finance Agency (FHFA) has issued policy guidelines that question that validity of PACE assessments; however, Florida law only requires the Property Owner to NOTIFY their mortgage holder of their intent to participate in the PACE program. Consent of the mortgage holder is NOT required. Therefore, the contractual relationship with any lender is the sole responsibility of the Property Owner. Many financial institutions that make home loans desire to preserve the option to sell those loans to the entities that are regulated by the FHFA. The FHFA appears to have instructed its GSEs not to purchase home loans when there is a senior lien such as a PACE special assessment. Therefore, in order to refinance your home loan, or for a prospective purchaser of your property to obtain a loan secured by the property, the special assessment may need to be paid off.

8.  It is important that Property Owners read through the Program Guidelines that have been supplied by the contractor or Program representative. It includes important information concerning the rules and regulations of the program and the steps that are involved in completing a project. The Program Administrator is available to answer questions, to assist with contractors, and to help solve problems.

**(SIGNATURE PAGE FOLLOWS)**



NOTICE OF RIGHTS AND RESPONSIBILITIES | 9/7/2016
DOC ID: FL.GC.1.4 | -279-ZD96V6 | 1

### I CERTIFY THAT I HAVE READ AND UNDERSTAND THE ABOVE DISCLOSURE

**Address:**   6308 ARTHUR ST

**City:**  HOLLYWOOD              **State:**     FL                    **Zip Code:**   33024

| PROPERTY OWNER NO. 1 | PROPERTY OWNER NO. 2 |
|---|---|
| **SIGNATURE:** *Grachian Smith* | **SIGNATURE:** |
| **NAME:**   GRACHIAN LONZELL SMITH | **NAME:** |
| **TITLE:** | **TITLE:** |
| **TRUST:** | **TRUST:** |
| **LEGAL ENTITY:** | **LEGAL ENTITY:** |

| PROPERTY OWNER NO. 3 | PROPERTY OWNER NO. 4 |
|---|---|
| **SIGNATURE:** | **SIGNATURE:** |
| **NAME:** | **NAME:** |
| **TITLE:** | **TITLE:** |
| **TRUST:** | **TRUST:** |
| **LEGAL ENTITY:** | **LEGAL ENTITY:** |



# EXHIBIT D

354706

# ygrene

Green Corridor

## Estimated Settlement Statement

### PROJECT DETAILS

| | | | |
|---|---|---|---|
| **PROJECT ID:** | FL-279-ZD96V6 | **STATEMENT DATE:** 11/28/2016 | |
| **DISTRICT:** | Green Corridor | **FUNDING DATE:** | |
| **PROPERTY ADDRESS:** | 6308 ARTHUR ST , HOLLYWOOD, FL 33024 | **APN:** 51-41-12-08-0080 | |
| **OWNER NAME(S):** | GRACHIAN LONZELL SMIT | | |
| **TRUST:** | | | |
| **LEGAL ENTITY:** | | | |

*Note: This is an estimated settlement statement which reflects estimated settlement costs. A final closing statement will be furnished upon completion of project funding.

### FINANCING SUMMARY

| PROJECT COSTS | |
|---|---|
| PAYMENT 1: | $14,756.00 |
| PAYMENT 2: | |
| PAYMENT 3: | |
| **TOTAL PAYMENTS** | **$14,756.00** |

| PROGRAM FEES | |
|---|---|
| APPLICATION FEE: | |
| PROCESSING & UNDERWRITING FEE: | $125.00 |
| JURISDICTION COST RECOVERY FEE: | $125.00 |
| RECORDING & DISBURSEMENT FEE: | $100.00 |
| TITLE & ESCROW FEE: | $65.00 |
| ENERGY AUDIT FEE: | |
| ORIGINATION FEE: | |
| BOND TRUSTEE FEE: | $90.00 |
| **TOTAL PROGRAM FEES** | **$505.00** |

| ELECTIVE FEES | |
|---|---|
| PRE-PAYMENT WAIVER FEE: | $221.34 |
| **TOTAL ELECTIVE FEES** | **$221.34** |

| INTEREST | |
|---|---|
| CAPITALIZED INTEREST: | $1,324.41 |
| **TOTAL INTEREST** | **$1,324.41** |

### TOTAL SPECIAL TAX / ASSESSMENT

| | |
|---|---|
| INTEREST RATE: | 7.110% |
| TERM (years): | 20 |

| TOTALS SUMMARY | |
|---|---|
| TOTAL PAYMENTS: | **$14,756.00** |
| TOTAL PROGRAM FEES: | **$505.00** |
| TOTAL ELECTIVE FEES: | **$221.34** |
| TOTAL INTEREST: | **$1,324.41** |
| **TOTAL SPECIAL TAX / ASSESSMENT** | **$16,806.75** |

| TAX FIRST PAYMENT DATE | |
|---|---|
| YOUR FIRST PAYMENT WILL BE: | 03/01/2018 |

 **grene**

Green Corridor

## AMORTIZATION TABLE

| Installment | Beginning Balance | Interest | Payment | Ending Balance | Principal Payment |
|---|---|---|---|---|---|
| 1 | $16,806.75 | $1,194.95 | $1,600.03 | $16,401.67 | $405.07 |
| 2 | $16,401.67 | $1,166.15 | $1,600.03 | $15,967.80 | $433.87 |
| 3 | $15,967.80 | $1,135.31 | $1,600.03 | $15,503.09 | $464.71 |
| 4 | $15,503.09 | $1,102.26 | $1,600.03 | $15,005.33 | $497.76 |
| 5 | $15,005.33 | $1,066.87 | $1,600.03 | $14,472.17 | $533.15 |
| 6 | $14,472.17 | $1,028.97 | $1,600.03 | $13,901.12 | $571.05 |
| 7 | $13,901.12 | $988.36 | $1,600.03 | $13,289.46 | $611.66 |
| 8 | $13,289.46 | $944.88 | $1,600.03 | $12,634.31 | $655.14 |
| 9 | $12,634.31 | $898.29 | $1,600.03 | $11,932.58 | $701.73 |
| 10 | $11,932.58 | $848.40 | $1,600.03 | $11,180.95 | $751.62 |
| 11 | $11,180.95 | $794.96 | $1,600.03 | $10,375.89 | $805.06 |
| 12 | $10,375.89 | $737.72 | $1,600.03 | $9,513.58 | $862.30 |
| 13 | $9,513.58 | $676.41 | $1,600.03 | $8,589.97 | $923.61 |
| 14 | $8,589.97 | $610.74 | $1,600.03 | $7,600.69 | $989.28 |
| 15 | $7,600.69 | $540.40 | $1,600.03 | $6,541.07 | $1,059.62 |
| 16 | $6,541.07 | $465.07 | $1,600.03 | $5,406.11 | $1,134.95 |
| 17 | $5,406.11 | $384.37 | $1,600.03 | $4,190.45 | $1,215.65 |
| 18 | $4,190.45 | $297.94 | $1,600.03 | $2,888.36 | $1,302.08 |
| 19 | $2,888.36 | $205.36 | $1,600.03 | $1,493.70 | $1,394.66 |
| 20 | $1,493.70 | $106.20 | $1,599.90 | $0.00 | $1,493.69 |
| **Total** | | **$15,193.71** | **$32,000.47** | | **$16,806.75** |



Green Corridor

## PROPERTY OWNER AGREEMENT, CERTIFICATION, & ATTESTATION

I have received a copy of this Estimated Settlement Statement, have carefully reviewed it and, to the best of my knowledge and belief, it is a true and accurate settlement of all receipts and disbursements made on my account, or by me, to date, in this transaction.

I hereby attest that all the following statements are true:

|  | OWNER 1 | OWNER 2 | OWNER 3 | OWNER 4 |
|---|---|---|---|---|

I/WE HAVE REQUESTED THE DISBURSEMENT OF FUNDS REFLECTED BY THIS ESTIMATED SETTLEMENT STATEMENT, AGREE TO PAY THE SPECIAL TAXES IMPOSED, AND TO REPAY THE DISBURSEMENT WHETHER OR NOT THE PROJECT IS COMPLETED TO MY/OUR SATISFACTION.

I/WE UNDERSTAND THAT THIS ESTIMATED SETTLEMENT STATEMENT IS BASED ON THE STATEMENT DATE. IF THE PROJECT IS COMPLETED AND FUNDED AFTER ...... 06/30/2017 ...., ADDITIONAL CHARGES WILL BE APPLIED, AS DESCRIBED IN YOUR FINANCING AGREEMENT.

I/We are the owner(s) of record for this property and/or I have the legal authority to sign on behalf of the entity that owns this property.

I/We have made timely payments on all debt secured by this property (including home equity lines of credit) for the last three years.

I/We have not declared bankruptcy in the last three years.

I/We have paid all property taxes secured by this property on time for the last three years (no late or delinquent payments).

I/We have not increased the amount of debt secured by this property (including increased balances on home equity lines of credit) since I/we applied for the program.

I/We have not authorized the addition of any new liens (other than the lien placed by Ygrene) on this property since I/we applied for the program and there are no involuntary liens in excess of $1,000 on the property.

| PROPERTY OWNER NO. 1 | PROPERTY OWNER NO. 2 |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME:   GRACHIAN LONZELL SMITH | NAME: |
| TITLE: | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |

| PROPERTY OWNER NO. 3 | PROPERTY OWNER NO. 4 |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: | NAME: |
| TITLE: | TITLE: |
| TRUST: | TRUST: |
| LEGAL ENTITY: | LEGAL ENTITY: |

To the best of my knowledge, this Closing Statement that has been prepared is a true and accurate account of the funds which were received and have been, or will be, disbursed by the undersigned as part of the settlement of this transaction.

SIGNATURE:                    DATE:  11-28-2016

NAME:  LAURA CHOI

TITLE:   DIRECTOR OF OPERATIONS

Estimated Settlement Statement
PROJECT ID:  FL-279-ZD96V6

6308 ARTHUR ST
HOLLYWOOD, FL 33024

11/28/2016