UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GEORGE W. WOOLLEY, TAMMY S. WOOLLEY, ANTHONY LOOK, JR., KIMBERLY LOOK, ALEJANDRO MARCEY, and FELICIA MARCEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YGRENE ENERGY FUND, INC., and YGRENE ENERGY FUND FLORIDA, LLC,<br><br>Defendants. | Case No. 17-cv-01258-LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 267 |

## INTRODUCTION

This is a putative class action. The plaintiffs sued Ygrene Energy for misrepresentations relating to home-improvement loans that finance environmental upgrades (such as solar panels or better windows).[1] The loans are called Property Assessed Clean Energy ("PACE") loans, and the alleged misrepresentations are that Ygrene and its agents falsely told homeowners that the loans would attach to their properties (like property taxes) and transfer upon sale to the new owners and,

---

[1] Order – ECF No. 52 at 1–2. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-01258-LB

correspondingly, failed to reveal that if homeowners sold their homes or refinanced their mortgages, then they would have to prepay the PACE loans and incur fees.[2] The court recently denied the plaintiffs' motion to certify California and Florida classes of homeowners, generally because the plaintiffs did not show that class members were exposed to the challenged marketing materials.[3] The Woolleys are the named plaintiffs for the Florida class.[4] Ygrene moved for summary judgment on the ground that as a matter of law, the written disclosures to them adequately disclosed the possibility of prepayment.[5] The court grants the motion.

## STATEMENT

### 1. The PACE Loans

PACE loans are not traditional loans, where a lender loans money, and a borrower repays the loan directly to the lender.[6] Instead, a PACE program — created through state legislative enactments — permits local governments to offer financing (through PACE loans) for clean-energy improvements to residential and commercial properties.[7] PACE financing is secured by a special tax-assessment lien on the property, and the property owner repays a PACE loan through property taxes.[8] The PACE obligation takes priority over mortgages or other financial encumbrances.[9] Thus, if a property owner wants to sell property or refinance a mortgage, the owner must repay the PACE assessment.[10] *See Fla. Bankers Ass'n v. Fla. Dev. Fin. Corp.*, 176 So. 3d 1258, 1262 (Fla. 2015) (PACE assessments in Florida run with the land and are enforced (and collected) in the same manner as any property tax).

---

[2] *Id.* at 1–3.
[3] Order – ECF No. 252 at 2.
[4] Second Amend. Compl. ("SAC") – ECF No. 44 at 2 (¶¶ 1–2).
[5] Motion – ECF No. 267.
[6] Order – ECF No. 252 at 3.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

**2. The Woolleys' PACE Loan**

Tammy and George Woolley used a PACE loan to finance a hurricane roof on their home in Florida.[11] They signed a (1) Financing Agreement and (2) a Notice of Rights, which is the first two pages of the agreement.

The Notice of Rights had the following disclosures, among others:

> 6. In accordance with Florida law, the lien securing the obligation to pay the special assessments will be senior to all private liens, including existing mortgages. Many mortgage and loan documents limit the ability of a Property Owner to place senior liens on property without the consent of the lender, or authorize the lender to obligate borrowers to prepay the senior obligation. . . .
>
> 7. The [FHFA] has issued policy guidelines that question the validity of PACE assessments; however, Florida law only requires the Property Owner to NOTIFY their mortgage holder of their intent to participate in the PACE program. Consent of the mortgage holder is NOT required. Therefore, the contractual relationship with any lender is the sole responsibility of the Property Owner. Many financial institutions that make home loans desire to preserve the option to sell those loans to the entities that are regulated by the FHFA. The FHFA appears to have instructed its [government-sponsored enterprises ("GSEs")] not to purchase home loans when there is a senior lien such as a PACE special assessment. Therefore, in order to refinance your home loan, or for a prospective purchaser of your property to obtain a loan secured by the property, the special assessment may need to be paid off.[12]

Section 5, "Collection of Assessment; Lien," said the following:

> The Assessment, and the interest and charges thereon resulting from delinquency in the payment of any installment of the Assessment, shall constitute a lien against the Property equal in dignity with county taxes and assessments, and when due shall be superior to all other liens, title and claims, including any mortgage, until paid. . . .[13]

Section 9, "Special Disclosure Regarding Certain Mortgage Lenders," had the following disclosure:

> Many lenders that make residential loans desire to preserve the option to sell those loans to [GSEs] that are regulated by the [FHFA]. The FHFA appears to have instructed its GSEs not to purchase home loans where there is a superior lien for qualifying improvements, such as the assessment lien. Thus, in order to refinance your residential loan, or for a prospective purchaser of your property to obtain a loan secured by the property, you may need to remove the assessment lien by prepaying the assessment obligation in full. You

---

[11] George Woolley Dep., Ex. B to Levin Decl. – ECF No. 267-3 at 15 (p. 159:2–4).

[12] Financing Agreement, Ex. A to Strothmann Decl. – ECF No. 267-5 at 2.

[13] *Id.*

thus should consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the assessment obligation, in deciding whether to participate in the program by executing this agreement. A prepayment premium may be applied on assessments that are paid early.[14]

Before they signed the Financing Agreement, the Woolleys received a Ygrene solicitation letter and then saw a video on Ygrene's website that said that the PACE assessment transferred to the new owners if they sold the property.[15] Ms. Woolley called Ygrene, and a Ygrene representative confirmed that the PACE loan was transferable and that the loan "was on [her] house, not on [Ms. Woolley] personally[.]"[16] The Woolleys had Ygrene's Financing Agreement for five days before they signed it.[17]

## 3. Relevant Procedural History

The operative complaint has the following claims relevant to the Florida class: (1) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") (claim three); (2) fraudulent inducement (claim five); negligent misrepresentation (claim six); unjust enrichment (claim seven); and negligence (claim eight).[18] The parties have consented to magistrate-judge jurisdiction.[19]

## SUMMARY-JUDGMENT STANDARD

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material

---

[14] *Id.* at 6.

[15] George Woolley Dep., Ex. 1 to LippSmith Decl. – ECF No. 279-2 at 3 (p. 94:12–16), 18 (p. 206:16–19); Tammy Woolley Dep., Ex. 2 to *id.* – ECF No. 279-3 at 5 (p. 52:18–23), 6 (p. 59:10–23), 12 (p. 68:9–18).

[16] Tammy Woolley Dep., Ex A. to Levin Decl. – ECF No. 267-2 at 20 (p. 90:10–17).

[17] *Id.* at 33–34 (pp. 155:1-156:1).

[18] SAC – ECF No. 44 at 46 (¶¶ 233–38), 48–51 (¶¶ 257–89). The plaintiffs moved for class certification only for the California and Florida classes and not for the nationwide class. Order – ECF No. 252 at 10–12.

[19] Consents – ECF Nos. 13, 18.

ORDER – No. 17-cv-01258-LB            4

facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Ygrene moved for summary judgment on the ground that its disclosures are not deceptive. The court grants the motion.[20]

---

[20] Order – ECF No. 52 at 12–14.

ORDER – No. 17-cv-01258-LB          5

As the court held previously, the Financing Agreement identifies the risks: (1) lenders want to preserve the option to sell to loans to government-sponsored entities ("GSEs") regulated by the FHFA; (2) the FHFA "appears to have instructed its GSEs not to purchase home loans where there is a superior lien for qualifying improvements, such as the assessment lien;" (3) the homeowner "may need to remove the assessment lien by prepaying the obligation in full" and "should consider the likelihood and timing of a possible refinancing or sale of your property, and the costs to prepay the assessment obligation, in deciding whether to participate in this program by executing this agreement;" and (4) "a prepayment premium may be applied on assessments that are paid early."[21]

The Notice of Rights also identifies the FHFA guidelines and describes the risks: (1) the PACE lien is a senior lien and lenders can obligate borrowers to prepay the senior obligation; (2) FHFA policy guidelines question the validity of the PACE assessments; (2) many financial institutions that make home loans want to preserve the ability to sell them to entities regulated by the FHFA; (3) the FHFA "appears to have instructed its GSEs [government-sponsored entities] not to purchase home loans when there is a senior lien such as a PACE special assessment;" and (4) "[t]herefore, in order to refinance your home loan, or for a prospective purchaser to obtain a loan secured by the property, the special assessment may need to be paid off."[22]

As the court held previously, this is not fraud or deception.[23] Deception under Florida's FDUPTA "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (cleaned up)); *see* Fla. Stat. Ann. § 501.204(1) ("unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful).

The plaintiffs nonetheless argue the use of the words "appears" and "may" in the disclosures is equivocal and misleading because it does not disclose that the FHFA requires consumers to pay

---

[21] *See supra* Statement (quoting Financing Agreement, Ex. A to Strothmann Decl. – ECF No. 267-5 at 6 (§ 9)).

[22] *See id.* (quoting Notice of Rights, Ex. A – ECF No. 267-5 at 2 (¶¶ 6–7).

[23] Order – ECF No. 52 at 13–14.

off their PACE loans for any real-estate transfer and downplays — by characterizing the FHFA's regulations as policy guidance — the reality that PACE obligations do not transfer.[24] The court rejected this argument previously and rejects it now.[25] The words do not make the disclosures ambiguous, misleading, or even negligent.[26]

The plaintiffs also argue that the Financing Agreement did not expressly contradict Ygrene's precontractual disclosures — through the video and the customer-service representative — that the loans were transferable to new owners.[27] The precontractual disclosures are not demonstrably false or fraudulent. Moreover, as the court has held, the Financing Agreement is not ambiguous or misleading and clearly states the contract's terms. Under Florida law, the contract governs, and the plaintiffs cannot rely on the video's or the representative's disclosures that are different from the written agreement.[28] *Silver v. Countrywide Home Loans, Inc.*, 483 F. App'x 568, 570 (11th Cir. 2012) (applying Florida law).

The court grants summary judgment to Ygrene because there are no triable issues of material fact that Ygrene's disclosures were deceptive.

## CONCLUSION

The court grants Ygrene's motion for summary judgment. This disposes of ECF No. 267.

**IT IS SO ORDERED.**

Dated: October 15, 2020

LAUREL BEELER
United States Magistrate Judge

---

[24] Opp'n – ECF No. 279 at 14–17.

[25] Order – ECF No. 52 at 13.

[26] *Id.*

[27] Opp'n – ECF No. 279 at 8–11, 17–22.

[28] *See* Reply – ECF No. 281 at 12–15 (collecting cases).